RICHARD H. SCHMIDT V. STATE OF NEBRASKA.

FILED JUNE 27, 1923. No. 22742.

1. **Husband and Wife:** ABANDONMENT: VENUE. Where the matrimonial domicile has been established in one county, and the husband sends the wife to another county to reside until such time as he could find a new home and send for her; and where a child is born to the wife in the latter county; and where the husband fails to establish a new home or communicate in any way with her except to write a letter that he has gone forever; such facts are sufficient to authorize the wife to institute proceedings for wife and child abandonment in the latter county. Comp. St. 1922, sec. 9584.

2. **Bastardy:** PRESUMPTION: REBUTTAL. A child born at any time during wedlock is presumed to be legitimate, but this presumption may be rebutted by evidence that the husband was impotent, or that he did not have access.

3. **Witnesses:** HUSBAND AND WIFE: ILLEGITIMACY OF CHILD. In an action in which the legitimacy of a child born in lawful wedlock is an essential issue of fact, neither the declaration nor the testimony of husband or wife is competent on the question of access, nor should either testify to collateral facts from which an inference of access or nonaccess may be drawn; but this rule does not preclude them from testifying concerning illicit relations in actions of adultery, incest, divorce or like cases not necessarily involving the illegitimacy of children born in lawful wedlock.

4. **Evidence** examined, and *held* sufficient to sustain a judgment of conviction.

ERROR to the district court for Pierce county: WILLIAM V. ALLEN, JUDGE. *Affirmed.*

*H. B. Muffly,* for plaintiff in error.

*Clarence A. Davis, Attorney General, C. L. Dort* and *George W. Ayres, contra.*

Heard before Morrissey, C. J., Letton, Rose, Dean, Day and Good, JJ., Button, District Judge.

Day, J.

This is a criminal prosecution brought in Pierce county, Nebraska, under section 9584, Comp. St. 1922, against Richard H. Schmidt, hereinafter called defendant, for abandoning his wife and child and wilfully neglecting and refusing to maintain or provide for them. Defendant was convicted and adjudged to serve a term of six months in the county jail. He has brought the record of his conviction to this court for review.

The facts will sufficiently appear in the course of the opinion.

It is first urged that the court erred in failing to sustain the defendant's motion to instruct the jury to return a verdict of not guilty, because the evidence showed that the venue was laid in the wrong county. Upon this phase of the case it is the contention of the defendant that the marital domicile of the defendant and his wife was at all times in Madison county, and that, therefore, if an offense was committed at all, which he denies, it occurred in Madison county and not in Pierce county.

It is now the settled law in this state that the county in which the matrimonial home or domicile of the husband and wife is located fixes the venue of a case prosecuted under section 9584, Comp. St. 1922, and that such a case cannot be instituted in another county. It has also been held that the husband has the right to establish the matrimonial domicile, and that it is the duty of the wife to recognize that fact. *Preston v. State,* 106 Neb. 848. The location of the matrimonial domicile depends in every case upon its own peculiar facts.

The defendant's motion for an instructed verdict in his favor was made at the close of the state's case. At that stage of the proceeding, the record showed that the defendant and his wife were married on September 10, 1919, in Madison county, in this state; that the defendant

and his wife lived at Newman Grove, in said county, at the home of defendant's parents until November 10, 1919; that at that time the defendant sent his wife to the home of her parents in Pierce county; that he purchased a ticket for her, and stated that he would go out and find a place for them to live, and would then come after her; that he stated he was going to Craig, which is in Burt county. He never called for her, or sent her any money, or communicated directly with her. On the contrary he wrote a letter to her father, dated at Omaha, Nebraska, November 18,1919, as follows:

"I am sure you will be somewhat surprised when you read this letter, but I am in trouble and forced to leave at once. Now don't think I am leaving because I did not love Violet, because I did love her, and now I will ask you to give her a home, and see that she is cared for. She is a good girl and I hate to leave her, but I am forced into it, and I am gone forever. My own folks don't even know I am gone. Now break the news easy to dear Violet or she is liable to do herself wrong. This letter will give her a divorce with my consent. Now there is three fellows in Norfolk watching to see you give Violet a home somewhere. Dick. I forgot to leave Violet's watch, so I will send it later on. The watch is broke so will leave it here in Omaha to get fixed and will have them send it to her. Am leaving for Great Lakes to-night. Don't know where I will go from there."

The record shows that on March 1, 1920, a child was born to the wife at Plainview, in Pierce county, where the wife and child have continued to reside with her parents. A complaint was filed against the defendant in July, 1920, in Pierce county, charging him with the offense upon which he was prosecuted. He was apprehended January 25, 1923, at Newman Grove, in Madison county.

Considering the wife's testimony in connection with the defendant's letter, it seems perfectly clear that it was defendant's intention to have his wife live in Pierce

county with her father until defendant established a new home. Under the condition of the record at the time the motion for a directed verdict was made, we are of the view that the court was right in refusing to direct a verdict in favor of the defendant.

While testifying in his own behalf, defendant stated that his home was in Madison county; that his wife had left him there; that she then told him she was going to leave, and she did not want him to bother her any more and she would not bother him. While this testimony appears to be inconsistent with the letter written by defendant, it was perhaps sufficient to raise a question of fact upon the issue of venue, and in all probability if the defendant had requested an instruction upon that issue, it would have been given. This he did not do. His only request was, as before stated, that the court direct a verdict in his favor because the evidence showed that the domicile of the parties was in Madison county. Defendant made no explanation of the circumstances which prompted him to write the letter, nor did he state whether in fact he went away as he stated in the letter he intended to do.

It is next urged that the court erred in excluding certain testimony offered in support of the defendant's theory that he was not the father of the child. While the defendant was a witness in his own behalf, he was asked, among other things, to detail a conversation had between himself and his wife on the evening prior to the wife's departure for Plainview, relating to the paternity of her unborn child. Objection was made to this line of testimony upon the ground that it called for a communication between husband and wife, and was not permissible under the statutes, and that it was incompetent. This objection was sustained. The defendant's counsel then offered to show by the witness that his wife had told him that she had deceived him; that he was not responsible for her pregnancy, but that another man was the father of her unborn child. Another witness was then

called by the defendant who testified that he had over-heard the conversation between the defendant and his wife at the time in question, and he was asked to relate what he had heard. Objection was made to this line of testimony on the ground of incompetency, which was sustained by the court. Thereupon an offer was made to prove by the witness that he heard the wife state to her husband that her pregnancy was not caused by him.

The exchange of remarks between the court and counsel clearly indicates that the trial court's ruling was based upon the theory that the wife could not give testimony bastardizing her child born in lawful wedlock. The question is thus fairly presented whether a child born in wedlock can be proved to be a bastard by the testimony or declaration of the wife. In the early history of jurisprudence the rule upon this question swayed back and forth. It will serve no useful purpose to enter upon a discussion of the ancient rules, and the reasons given therefor. They can readily be found in any of the standard text-books on evidence. We think the rule settled by the weight of decisions in this country is that a child born in wedlock is presumed to be the legitimate offspring of the husband and wife, and this is so even though the birth of the child happen so soon after the marriage as to render it certain that it was the result of coition prior thereto. This rule is based in the main upon the reason that to permit such testimony would be against public policy. The following cases support this rule: *Dennison v. Page,* 29 Pa. St. 420, 72 Am. Dec. 644, and note, p. 649; *Wilson v. Babb,* 18 S. Car. 59; *Zachmann v. Zachmann,* 201 Ill. 380; *Tioga County v. South Creek Township,* 75 Pa. St. 433.

This presumption of legitimacy may be rebutted by competent proof that the husband had no access to the wife, or that he was absent at such time as in the course of nature the child was begotten; that he was impotent, or other circumstances showing that he could not have

Schmidt v. State.

been the father of the child. In *State v. Lavin,* 80 Ia. 555, it is said:

"When a child is born to a married woman, the law presumes it to be legitimate, and, unless born under such circumstances as to show that the husband could not have begotten it, this presumption is conclusive. But the presumption may be rebutted by facts and circumstances which show that the husband could not have been the father, as that he was impotent, or could not have access."

This rule finds support in *Wright v. Hicks,* 12 Ga. 155, and *Powell v. State,* 84 Ohio St. 165.

No attempt in conformity to the rules of evidence was made by the defendant to show any circumstances that rendered it impossible for him to have been the father of the child.

The question is then presented, may the husband or wife testify concerning the illegitimacy of a child born in lawful wedlock? In 1 Jones, Commentaries on Evidence, sec. 97, the question is discussed, and numerous authorities cited. The author says:

"It is well settled on grounds of public policy, affecting the children born during the marriage, as well as the parties themselves, that the presumption of legitimacy as to children born in lawful wedlock cannot be rebutted by the testimony of the husband or the wife to the effect that sexual intercourse has or has not taken place between them; nor are the declarations of such husband or wife competent as bearing on the question. The rule not only excludes direct testimony concerning such intercourse, but all testimony of such husband or wife which has a tendency to prove or disprove legitimacy; for example, it was held incompetent to ask the husband, for the purpose of proving nonaccess, whether at a given time he did not live a hundred miles away from his wife, and whether at that time he was not cohabiting with another person. And the mother of a child born in wedlock, though begotten before, is incompetent to prove

that the child was not begotten by the man who became her husband before its birth. * * * The rule rests not only on the ground that it tends to prevent family dissension, but on broad grounds of public policy. * * * Nor does it depend upon the form of action or the parties; on the contrary, it obtains whatever the form of legal proceedings, or whoever may be the parties."

It is quite clear that, if the wife would not be permitted to testify to facts which would bastardize her child, her declarations could not be used in evidence to prove the same fact.

In view of the entire record, and the manner in which the defendant sought to establish that he was not the father of the child, we are of the opinion that the rulings of the trial court were clearly right.

While it seldom occurs that two cases are exactly alike, the general principles here involved find support in the following cases: *Wallace v. Wallace,* 137 Ia. 37; *People v. Overseers of the Poor,* 15 *Barb.* (N. Y.) 289; *Mink v. State,* 60 Wis. 583; *Egbert v. Greenwalt,* 44 Mich. 245; *Evans v. State,* 165 Ind. 369, 2 L. R. A. n. s. 619, and note; note under *Powell v. State* (84 Ohio St. 165), 36 L. R. A. n. s. 255.

It is next urged that the court erred in giving instruction No. 4, which reads as follows: "If the prosecuting witness, Violet Schmidt, and the defendant, Richard H. Schmidt, were lawfully married and thereafter a child was born to them in lawful wedlock, the law conclusively presumes its legitimacy and that it was the defendant's child." In this instruction we think there was a technical error in the use of the word "conclusively." As before pointed out, the presumption of legitimacy may be rebutted by proper testimony. In view of the record, however, that there was no proper testimony tending to overcome the legal presumption of legitimacy, the use of the word "conclusively" in the instruction was not prejudicial.

Complaint is also made of certain remarks of the trial

judge made during the progress of the trial, which, it is claimed, were prejudicial. It appears that quite a colloquy occurred between defendant's counsel and the court as to the admissibility of certain lines of testimony. Counsel was insistent in his efforts, and the court, in answering counsel, remarked: "If a man marries a woman voluntarily, he takes her for better or worse." Whereupon counsel stated "The evidence will show he did not marry her voluntarily." The court then remarked: "It doesn't make any difference, it is his business to support her regardless of who she is or where she was." In view of the testimony sought to be elicited, which gave rise to the argument between counsel and the court, the ruling of the court was entirely correct.

As we view it, the remarks of the court were without prejudice. No objection was made to the remarks at the time, and no request was made that the jury be instructed to disregard the statements made by counsel and the court.

Other assignments of error are made, which we have examined, and we find them to be without substantial merit.

No prejudicial error appearing in the record, the judgment of the trial court is            AFFIRMED.