In re Estate of Martin McDermott.
John F. McDermott, appellant, v. Stephen W.
McDermott et al., appellees.

Filed July 7, 1933.   No. 28576.

*Beeler, Crosby & Baskins,* for appellant.

*George N. Gibbs, George B. Dent, Jr., Halligan, Beatty & Halligan* and *Milton C. Murphy, contra.*

Heard before Goss, C. J., Rose, Day and Paine, JJ., and Begley, Landis and Meyer, District Judges.

Paine, J.

From a judgment entered upon a directed verdict, finding that the appellant is not an heir at law of Martin McDermott, and is not entitled to inherit from his estate, the appellant appeals, and for reversal alleges nine errors. Three relate to the refusal to admit evidence; the others set out that the court erred in sustaining motion for directed verdict, the same being contrary to the law and to the evidence.

Martin McDermott died intestate in Lincoln county, Nebraska, December 31, 1930, and left surviving him a widow (from his second marriage) and three sons,

Stephen W. McDermott, Elbert T. McDermott, and Alfred F. McDermott. Under the law, the widow would ordinarily receive one-fourth of the estate and the three sons each four-sixteenths of the estate. On June 19, 1931, John F. McDermott, the appellant, filed his application in the county court to be declared to be an heir, alleging that he was an illegitimate son of said Martin McDermott and Martha Griffiths, and was born on March 1, 1901, and that on December 7, 1930, the said Martin McDermott made written acknowledgment that he was his father.

After trial in the county court, judgment was entered in accordance with the application of said John F. McDermott, finding him to be an heir at law, and entitled to three-sixteenths of said estate. Upon appeal to the district court, this finding was reversed, and a judgment was entered directing the jury to find against the contentions of said John F. McDermott.

Martha Griffiths, the mother of the appellant, married the appellee, Stephen W. McDermott, December 19, 1900, the appellant being conceived out of wedlock, but born in wedlock March 1, 1901. No other children were born to this union, and, after living together for about four years, they were divorced in 1906, and each afterwards remarried. The appellant lived constantly with his mother until her death in 1915, and in his application for a marriage license, when 19 years of age, swore under oath that Stephen W. McDermott was his father. After the death of his mother he worked for different people, and occasionally worked for his grandfather, Martin McDermott, whom he is attempting in this action to prove to have been his natural father, but he never made his home with him.

In July, 1927, Martin McDermott was placed under the guardianship of E. E. Kugler, a banker, who was, after the death of Martin McDermott, also appointed administrator of his estate. Appellant was a customer of Kugler's bank. Martin McDermott had several strokes, one

in 1930, and his mental and physical condition became increasingly more serious. At times he was locked in his room at nights, for he had a habit of hooking his cane around any piece of furniture and pulling it over, and they were afraid he would do that to the stove. After August, 1930, he was not able to leave his bed, and his wife remained with him night and day, taking good care of him, until his death upon December 31, 1930.

The appellant, in an attempt to comply with section 30-109, Comp. St. 1929, and also with the rules announced in the case of *In re Estate of Winslow*, 115 Neb. 553, on December 7, 1930, some 24 days before the death of Martin McDermott, brought to his bedside a paper, exhibit A, reading as follows: "Wellfleet, Nebr. I hereby acknowledge myself to be the father of John F. McDermott;" and said Martin McDermott made some large, shapeless scrawls over said paper. Then three men signed their names thereto as witnesses. The first was the said E. E. Kugler, who testified that he did not know what Martin McDermott's mental condition was at the time, or whether he knew what the paper was that he was signing. E. C. McGuire, the second witness, was the stepson of Martin McDermott, and testified that they propped him up on pillows, and he tried to sign with a pen, but could not, and then he made some marks with a pencil, and that the old man seemed to know what he was doing. The third witness, Judson Burrows, was a brother-in-law of Martin McDermott, who had known him over a long period of years, and testified that he saw him from December 5 to December 9, 1930, and that only once during that time did he appear to recognize him; that, at the time the instrument was placed before Martin McDermott, they had to raise his hand up to the paper; that he was helpless, and that he did not know anything; that when the paper was read to him he did not even smile; that he could not talk; that he could not see any expression on his face that indicated that he knew anything about what they were read-

ing to him; that they raised him up in bed; that he could not raise his hand up, it was down to his side; that they had to raise his hand up and put it on the paper; that he could make only a sort of a mark; that he started his pencil down there and then he went up there; his hand went, but he did not know where he was going. Mr. Burrows was then asked whether he believed that Martin McDermott knew what he was doing when he signed the paper; and his reply was: "I told them then and after it was signed, he didn't know what he was doing. * * * I tried to impress on the men that he wasn't capable or able to."

At the close of the plaintiff's evidence, the defendants made a motion for an instructed verdict, setting out that exhibit A is insufficient as an acknowledgment in writing, under section 30-109, Comp. St. 1929, and is of no force and effect whatever. Defendants also insisted in their motion that the petitioner had wholly failed to prove that said Stephen W. McDermott did not have access to the said Martha Griffiths prior to the date of their marriage, and failed to prove that Stephen W. McDermott was impotent, and further objected to exhibit A as being of no force and effect for the reason that the acknowledgment required by section 30-109, Comp. St. 1929, must relate to and refer to an illegitimate child; and thereupon the court made the following ruling: "It seems to the court's mind that, in this case, there is not sufficient evidence to permit exhibit A to be put into the record or to proceed further. The plaintiff has failed to establish a case and the court will so instruct the jury."

■ "A trial judge is no longer required to submit a case to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in proceeding to find a verdict in favor of the party introducing such evidence." *Weed v. Chicago, St. P., M. & O. R. Co.*, 5 Neb. (Unof.) 623. See *Brown v.*

*Swift & Co.,* 91 Neb. 532; *Chicago, R. I. & P. R. Co. v. Sporer,* 69 Neb. 8; *Iowa Hog & Cattle Powder Co. v. Ford,* 87 Neb. 708.

"The action of a trial court in withdrawing a cause of action from the consideration of the jury will not be held erroneous on account of the reason given therefor by the court, if the withdrawal is proper for any reason." *Kohler v. Hughbanks,* 79 Neb. 320. See *Longnecker v. Longnecker,* 90 Neb. 784.

■ A child born at any time during lawful wedlock is presumed to be legitimate, but this presumption may be rebutted by evidence that the husband was impotent, or that he did not have access. *Schmidt v. State,* 110 Neb. 504; *Dennison v. Page,* 29 Pa. St. 420, 72 Am. Dec. 644, 649.

It is contended by the appellee that the words "illegitimate" and "father," as used in section 30-109, Comp. St. 1929, have, by common law and the law of this state, a well-defined meaning: "Illegitimate" means begotten and born out of wedlock; "father" means natural father. And it has been held that the presumption of legitimacy is not weakened by proof of the fact that the child was conceived before the marriage of its mother, for it is founded upon the supposition that such child was begotten by the man who subsequently became its mother's husband. 3 R. C. L. 726, 730; *State v. Ferguson,* 187 Ia. 1073, 8 A. L. R. 426; 1 Jones, Blue Book of Evidence, p. 450.

■ But it is held to be the better rule that, while the law presumes every child legitimate which is born in lawful wedlock, still there is, and should be, a difference between postnuptial and antenuptial conception; in the latter, slighter proof should be required to repel the presumption of legitimacy arising from marriage. *Wright v. Hicks,* 15 Ga. 160, 171, 60 Am. Dec. 687; *Kennedy v. State,* 117 Ark. 113; *Wallace v. Wallace,* 137 Ia. 37, 126 Am. St. Rep. 253, 15 Ann. Cas. 761, 14 L. R. A. n. s. 544; 3 R. C. L. 730, note. See, also, 126 Am. St. Rep. 273, note; 7 C. J. 940.

■ It has generally been held, under the so-called Lord Mansfield rule, that a husband or wife is incompetent to testify as to the husband's nonaccess in a bastardy or other proceeding, where such testimony would tend to bastardize, or prove a child conceived after marriage to be illegitimate. This rule is founded on the theory that such evidence should be excluded on the grounds of decency, morality, and public policy. *Craven v. Selway,* 246 N. W. (Ia.) 821.

The law is not willing that a person shall be declared a bastard to suit the whims or purposes of any one, nor upon evidence merely that no actual act of intercourse is proved to have occurred between husband and wife at or about the time of becoming pregnant. The proof must be such as to show the impossibility of access, and this the evidence fails to prove. *Boulden v. McIntire,* 119 Ind. 574, 12 Am. St. Rep. 453; *Powell v. State,* 84 Ohio St. 165.

In the case at bar, John F. McDermott, appellant, attempts to prove his illegitimacy for the purpose of sharing directly in his grandfather's estate. He had the burden of proving, first, that he was illegitimate; second, that his grandfather, Martin McDermott, was actually his illegitimate father; and, third, to prove that said Martin McDermott recognized the appellant as his illegitimate child, in accordance with section 30-109, Comp. St. 1929.

To bastardize himself, the appellant was required to show that there was no such access as could have enabled Stephen W. McDermott to be his father. This he failed to do, for while he offered evidence to show that his grandfather, Martin McDermott, might have had connection with his mother before her marriage, still the evidence discloses that Stephen W. McDermott, whom she married, was also present at times at the home of his future wife, and at one time took her to a dance and did not return until the next morning about 10 o'clock, and this was also prior to the time that he married her.

It is also held that no one should be allowed by incompe-

tent evidence to malign the character of his mother. The facts rebutting the presumption of legitimacy of a child born in wedlock must be established by clear, satisfactory, convincing, and competent evidence, and the trial court held that such evidence had not been produced in this case, and found that John F. McDermott was not an heir at law of Martin McDermott, deceased, and was not entitled to inherit from his estate, and, finding these facts to be true, the trial court reached the opinion that the competency, weight, and character of the evidence submitted was not sufficient to support a verdict in favor of the appellant. Finding no prejudicial error in the record, the judgment of the district court is hereby

AFFIRMED.