IN RE ESTATE OF YANCEY OAKLEY, DECEASED. CHARLES ELLIOTT ET AL., APPELLANTS. V. DORIS OAKLEY, APPELLEE.
31 N. W. 2d 557

Filed April 1, 1948. No. 32293.

*Eugene. D. O'Sullivan, Arthur J. Whalen, Ernest S. Priesman,* and *Eugene D. O'Sullivan, Jr.,* for appellants.

*S. L. Winters, J. J. Krajicek,* and *H. C. Winters,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and BARTOS and JACKSON, District Judges.

MESSMORE, J.

This is an appeal from a judgment of the district court decreeing that Doris Oakley was the daughter of Yancey Oakley, deceased, also known as Dude Oakley, his sole issue and heir at law, and entitled to inherit his estate; and that Charles and George Elliott, nephews of the deceased, were not his heirs at law, nor entitled to inherit any of his estate. The judgment of the district court sustained a judgment of the county court to the same effect. Jury was waived and trial was had to the court.

The pleadings in the county court and district court raise the issue as to whether or not Doris Oakley was the daughter of Yancey Oakley, known as Dude Oakley, who died intestate February 12, 1945, the sole and only heir at law of the deceased, and entitled to inherit his estate. Charles and George Elliott, nephews of the deceased, claimed to be the sole and only heirs at law of his estate, and alleged that Doris Oakley was a

stranger to the estate, an interloper, and not entitled to inherit.

From the overruling of the motion for new trial, Charles and George Elliott appeal from the judgment as heretofore indicated.

The record discloses that Hugh N. Wheelock and Georgie McBride were married October 28, 1894, at Hopkins, Michigan. The certified copy of the marriage license in evidence shows the name Georgie McBride. Throughout the record she is referred to as. Georgia, which we assume was her correct first name. They came to Nebraska where Wheelock was employed at a rendering plant located between Bellevue and LaPlatte. They resided in. a company house north of the plant. They had lived at that location for two years when a man named Reynolds brought Yancey Oakley, commonly referred to as Dude Oakley, to the Wheelock home. Oakley had had some trouble at Fort Crook. Wheelock worked nights, and Oakley stayed at the Wheelock home for two or three days.

In a petition for divorce filed by Wheelock on or about August 22, 1903, he alleged that he and Georgia McBride were married on November 28, 1894, at Hopkins Station, Michigan, where they lived as husband and wife for three years before they removed to La-Platte, Nebraska, where they resided until February 1901, and then moved to Griswold, Iowa, where they resided until February 1903. This petition indicates that the Wheelocks moved to Nebraska in 1897. If this be true, they became acquainted with Yancey Oakley two years from that date, or in 1899.

About six months after Oakley left the Wheelock home they moved to the Palmtag farm. Wheelock, at the request of his wife, went to Omaha, secured a baby girl, and brought her home. He did not remember where he obtained her, what her name was, who her parents were, or what his wife named her. Six or eight months after the Wheelocks procured the baby girl,

Oakley came to the Wheelock home and took Georgia Wheelock and the baby, who at that time was less than a year old, with him. After that, Wheelock continued at his work and boarded with an aunt for a period of time that is not disclosed by the testimony. He paid no further attention to his wife or Oakley, but moved to Griswold, Iowa. A year or so after he and Georgia had been separated she sent for him. He came with a team and wagon to the vicinity of Twentieth and Vinton Streets in Omaha, and took Georgia and the little girl to Griswold, Iowa. The three lived together in Griswold for six or eight months when Oakley came and took Georgia and the little girl away with him. Wheelock obtained a divorce from Georgia Wheelock on September 23, 1903, at Atlantic, Iowa. The petition in the divorce action charged that in February 1903, Georgia Wheelock left Hugh Wheelock, went to live with Oakley, and was guilty of repeated acts of adultery with him.

During the marriage relation between the Wheelocks, Georgia was never pregnant with child, nor did they adopt a child. Wheelock testified that he would not be able to recognize the appellee as the little girl he obtained in Omaha because it was so long ago.

The appellee testified that she would be 46 years old the 17th of March, 1946; that she was born in Omaha on March 17, 1900, and was a daughter of Yancey Oakley, commonly known as Dude. Her earliest remembrance was that she lived at Fort Crook with Yancey Oakley as her father, and her mother was referred to as Georgia Oakley. She attended school at Fort Crook under the name of Doris Oakley; attended the Bellevue high school, St. Mary's Seminary and Van Sant's School. Her tuition and board, when required, were paid by Yancey Oakley. He at all times introduced her as his daughter, and referred to himself as her father. Georgia Wheelock died in 1908. The appellee was unable, by investigation, to find a birth certificate, or a marriage

certificate to show the marriage of Yancey Oakley and Georgia Wheelock. She knew Georgia's maiden name was McBride and that she came from Michigan, but she did not know who brought her. She could find no record where she had been adopted by the deceased.

The evidence further discloses that the appellee was married at an early age and removed from Nebraska, and from such time there was no evidence of any further communication between her and her alleged father.

There is evidence by persons who attended school with her corroborating the appellee that she was held out by Yancey Oakley as his daughter and was so known and recognized by him. There is a school record in evidence showing Doris Oakley to have been born March 17, 1900, at Omaha, age seven years in 1907, and to be the daughter of Y. R. Oakley.

A former agent of an insurance company testified that he became acquainted with Yancey Oakley in 1913, at his place of business; that on or about June 11, 1915, an application was made by Yancey Oakley for a policy of insurance wherein Doris Oakley was made the beneficiary. Yancey Oakley, as the applicant, signed the application in the presence of this witness who identified Oakley's signature and his own signature to the application. Doris Oakley was therein designated as Yancey Oakley's daughter. This witness likewise testified to applications for additional insurance insuring Doris Oakley and designating Yancey Oakley as her father.

One of the appellants testified that he was 61 years of age. He lived two blocks from where mother Oakley lived when he was 15 years old, which would be either in 1899 or 1900. He saw Georgia Wheelock at mother Oakley's home on two or three occasions. Yancey and Georgia stayed awhile at mother Oakley's home, but due to difficulties that arose to the effect that the little girl was not Yancey Oakley's little girl and that Yancey and Georgia were not married, Yancey's

mother requested Yancey and Georgia to move. This witness believed they moved to South Omaha. He saw the child when she was 12 years old and used to come and play with his sister at Ralston. He did not visit Yancey Oakley very often, and never heard that he was the father of the child.

A witness testified that she knew the Oakley family, but did not know definitely where they lived; that Yancey Oakley and Georgia lived at the home of mother Oakley for a short time. She never saw Georgia at the mother's home, but knew she lived on Twentieth and Vinton Streets after she had moved. Yancey Oakley's mother talked of the trouble that Yancey had with Wheelock about taking his wife and baby away from him. This witness saw the child when she was 16 years old.

Another witness testified that she was acquainted with Hugh and Georgia Wheelock when the Wheelocks lived at the Palmtag farm south of Bellevue. The occasion of her first meeting Georgia Wheelock was when Georgia came after this witness and wanted her to go and stay with her a few days as she had a felon on her finger and a baby to take care of, and needed help. The witness at that time was about 16 years of age. She could not remember the date. She stayed with the Wheelocks a few days. Hugh and Georgia were living there with a very young baby girl, possibly a month or two old. She knew Yancey Oakley at the time. Georgia Wheelock told her that she had adopted the baby, but did not say where she got it. They called the child Doris.

The appellants contend the trial court erred, for the reason that the evidence failed to support the contention of the appellee that she was the sole and only heir at law of Yancey Oakley, deceased, either as his legitimate daughter, his adopted daughter, or his illegitimate daughter.

It is apparent from the record that Georgia Wheelock

and Yancey Oakley were never united in marriage, or that Yancey Oakley married any other woman. There is no competent evidence that Georgia Wheelock was ever pregnant with child. Likewise, there is no evidence that the appellee was ever legally adopted by Yancey Oakley. We conclude that there is no competent evidence in the record to show that the appellee was the legitimate or adopted daughter of Yancey Oakley.

The remaining question to determine is whether or not the appellee was the illegitimate daughter of Yancey Oakley.

In this connection, "* * * the party who assumes the fact of illegitimacy must disprove every reasonable possibility of legitimacy, * * *." 10 C. J. S., Bastards, § 6, p. 38.

In this state, the burden of proof is on the appellee, since she seeks to bastardize herself, to prove (1) that she was illegitimate; (2) that Yancey Oakley was actually her illegitimate father; and (3) that Yancey Oakley recognized the appellee as his illegitimate child in accordance with the provisions and requirements of section 30-109, R. S. 1943.

The evidence fails to show that the appellee was the child of Georgia Wheelock and, as heretofore stated, that Georgia Wheelock was ever pregnant with child. The evidence is rather to the effect that Hugh Wheelock obtained a girl child somewhere in Omaha and took her to live in his home with his wife Georgia and himself. This evidence is corroborated by a witness who was in the Wheelock home doing some work for Georgia when a baby girl, a month or two old, was there, and Georgia Wheelock informed this witness that they had adopted the baby. Further, at the time Yancey Oakley came to the Wheelock home and took Georgia Wheelock and the baby to live with him, the baby was less than a year old.

With the foregoing facts in mind, it is true that the

record is in doubt as to whether the appellee was born in wedlock or out of wedlock. Insofar as the record in this case shows, she may have been born in wedlock. If this be true, the rule settled by the weight of decisions in this country is that a child born in wedlock is presumed to be the legitimate offspring of the husband and wife. See Schmidt v. State, 110 Neb. 504, 194 N. W. 679; In re Estate of McDermott, 125 Neb. 179, 249 N. W. 555.

"This presumption of legitimacy may be rebutted by competent proof that the husband had no access to the wife, or that he was absent at such time as in the course of nature the child was begotten; that he was impotent, or other circumstances showing that he could not have been the father of the child." Schmidt v. State, *supra*. See, also, Wright v. Hicks, 12 Ga. 155; Powell v. State, 84 Ohio St. 165, 95 N. E. 660; State v. Lavin, 80 Iowa 555, 46 N. W. 553; Eversley on Domestic Relations (4th ed.), c. VI, p. 582.

"The facts rebutting the presumption of legitimacy of a child born in wedlock must be established by clear, satisfactory, convincing, and competent evidence, * * *." In re Estate of McDermott, *supra*.

It is apparent that the appellee seeks to rebut the presumption of legitimacy by attempting to prove that Hugh Wheelock had no access to his wife, that he was absent at such time as in the course of nature a child was begotten, or that under the circumstances he could not have been her father. She makes reference to the evidence as to the time when the Wheelocks became acquainted with Yancey Oakley, which would either bring him to their home in 1896 or 1899; the evidence appearing in the record as to her birth being March 17, 1900; and the separation of Hugh and Georgia Wheelock for a period of a year after Yancey Oakley had broken up the Wheelock home.

"The law is not willing that a person shall be declared a bastard merely because no act of intercourse is proved

to have occurred between husband and wife at about the time of pregnancy; the proof must go further, and show impossibility of access." In re Estate of McDermott, *supra.*

"The proof must be such as to show the impossibility of access, and this the evidence fails to prove. Boulden v. McIntire, 119 Ind. 574, 12 Am. St. Rep. 453; Powell v. State, 84 Ohio St. 165." In re Estate of McDermott, *supra.*

"This legal presumption is not to be rebutted by circumstances which create only doubt and suspicion, such as adultery by the mother." Eversley on Domestic Relations (4th ed.), c. VI, p. 582.

When opportunity existed for sexual intercourse within such period that the child in question might have been begotten by the husband, mere probabilities can have no weight against the legal inference. Bury v. Phillpot, 2 Myl. & K. 349. See, also, note in 36 L. R. A. n. s. 257. It was said in that case there was nothing against the evidence of access except evidence of adulterous intercourse with the wife, which the court said would not affect the legal inference.

"Improbability alone will not break the cogency of the presumption (Matter of Findlay, 253 N. Y. 1, 10), nor will a result of illegitimacy be reached by a balancing of probabilities. (Matter of Findlay, 253 N. Y. 1, 8; Van Aernam v. Van Aernam, 1 Barb. Ch. 375, 377; * * *.)" Matter of Smith, 136 Misc. 863, 242 N. Y. Supp. 464. See, also, Godfrey v. Rowland, 16 Hawaiian Rep. 377.

The appellee has failed to show the impossibility of access of the husband, Hugh Wheelock, to her alleged mother, Georgia Wheelock. Therefore, had it been proved that Georgia Wheelock gave birth to a girl child, the appellee's proof would be insufficient to overcome the presumption of legitimacy. However, in the instant case there is no evidence, as before stated, that Georgia Wheelock was ever pregnant with child. It is clear

that the appellee has failed to prove that she is the illegitimate daughter of Yancey Oakley, deceased.

The appellee cites section 30-109, R. S. 1943, which has read substantially the same since 1861. See Thomas v. Estate of Thomas, 64 Neb. 581, 90 N. W. 630. This statute provides in part: "Every child born out of wedlock shall be considered as an heir of the person who shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, * * *."

Appellee's contention is that the evidence discloses Yancey Oakley, in writing, met the requirements of the statute and acknowledged her as his heir. We deem it unnecessary to determine the sufficiency of the evidence as to whether or not it meets the requirements of the cited statute. The right to inherit, as provided for in this statute, depends upon whether or not the illegitimacy of the person claiming such right has been established. In the instant case the appellee has failed to prove that she was the illegitimate child of Yancey Oakley. The fact of recognition of the appellee by Yancey Oakley as his daughter could confer on her no inheritable rights as his heir unless her illegitimacy was first established. See Bethany Hospital Co. v. Hale, 64 Kan. 367, 67 P. 848.

We conclude that the judgment of the trial court must be reversed and the cause remanded to enter judgment against the appellee and in favor of the appellants, declaring the appellants to be the sole and only heirs at law of Yancey Oakley, deceased.

REVERSED AND REMANDED.