DeLONE RAE HUDSON, APPELLEE, v. MARVIN DeLYLE HUDSON, APPELLANT.

36 N. W. 2d 851

Filed April 14, 1949. No. 32567.

*Towle, Young & Mattson,* for appellant.

Reller, McArthur & Davis, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

DeLone Rae Hudson commenced this action in the district court for Lancaster County on November 6, 1947, against Marvin DeLyle Hudson. The purpose of the action is to obtain an absolute divorce, custody of their minor son, and an allowance for his support. The basis of the action is extreme cruelty.

The defendant, by his father and next friend, filed a cross-petition. The purpose thereof is to obtain an annulment of their marriage. The basis on which he seeks annulment is that he was induced to enter into the marriage through fraud practiced upon him by the plaintiff. This alleged fraud relates itself to the paternity of the unborn child which plaintiff was carrying at the time of their marriage.

On May 28, 1948, the trial court entered its decree wherein it dismissed defendant's cross-petition; denied plaintiff a divorce; awarded custody of the minor child, Kim DeLyle Hudson, to plaintiff with defendant given the right to visit the son at reasonable times and places; directed defendant to pay $25 a month for the care and maintenance of the son; and taxed costs, including $100 additional attorney's fee, to defendant.

From the overruling of his motion for new trial the defendant appeals and plaintiff cross-appeals.

The record discloses that the parties started going together in the early part of 1946 while attending high school. Appellee was then apparently about 16 years of age and appellant 17 years of age for the record discloses she was 17 and he was 18 at the time of their marriage. By Christmas of that year they had become sweethearts and were going steady. They were married on July 12, 1947, and, for a short time thereafter, lived with his parents. About the first of August they established a

home of their own at 525 South 25th Street in Lincoln, Nebraska. They lived in this home until shortly after the baby was born. The baby was born in St. Elizabeth's Hospital on October 24, 1947. Appellee never returned to their home thereafter except on November 3, 1947, when she returned for the purpose of getting her apparel and other personal things. This action was instituted shortly thereafter.

As to the appeal from the dismissal of his cross-petition the appellant states the question involved to be, is a man entitled to an annulment of a marriage into which he enters because of the fraudulent representations by the woman that the child of which she is pregnant is his, when in fact it is the child of another?

Marriage is a civil contract which, if procured by fraud, may, under certain conditions, be set aside. See sections 42-101, 42-118, 42-119, R. S. 1943.

The difficulty with appellant's position in this regard is that no such factual situation exists. The record discloses that appellee and appellant were sweethearts and going together steady. That during this period, and within the probable period of gestation, they became intimate. The admitted intimacy occurred on February 4, 1947, and the baby was born on October 24, 1947. See Souchek v. Karr, 78 Neb. 488, 111 N. W. 150. There is no evidence that appellee was ever intimate with anyone else. Subsequently, when appellant was informed by appellee of her then condition he recognized himself as the father of their unborn child. Later, in the forepart of July 1947, after she had gone to Spokane in the state of Washington to give birth to the child, he asked her, by telephone, to come back and be married. This she did and they were married on July 12, 1947. The record shows he had full knowledge of all the facts, which were of his own making, and with such knowledge he entered into the marriage. We find no fraudulent misrepresentations on the part of the appellee to induce the marriage.

However, appellant calls our attention to certain dec-

larations made by appellee, after the birth of the child, to the effect that appellant was not the father of the child and she married him only for the purpose of giving the child a name. This evidence, denied by appellee, relates itself to statements she is purported to have made first, on October 29, 1947, to appellant alone, and thereafter, on November 3, 1947, to appellant in the presence of others. If it were competent for us to consider this evidence which was admitted without objection, which it is not for the reasons as hereinafter set forth, we do not think the facts disclosed by the record are sufficient to sustain appellant's position under the rule that: " 'Where a trial is had to the court, and the evidence on a particular point is in irreconcilable conflict, the court will, in its determination of that question, consider the findings of the trial court, although it is required by statute to try the case on the record de novo.' Greusel v. Payne, 107 Neb. 84. See McGill v. McGill, 114 Neb. 636; In re Estate of Waller, 116 Neb. 352; Jones v. Dooley, 107 Neb. 162; Corn Exchange Nat. Bank v. Jansen, 70 Neb. 579." Allen v. Allen, 121 Neb. 635, 237 N. W. 662.

There is another reason why the evidence contained in the record, if competent, would be insufficient. Section 42-335, R. S. 1943, requires: "No decree of divorce and of the nullity of a marriage shall be made solely on the declaration, confessions or admissions of the parties, but the court shall, in all cases, require other satisfactory evidence of the facts alleged in the petition for that purpose." Appellee denied that she had ever made such statements but even had these conversations occurred and such admissions made, under the provisions of the foregoing statute, such evidence alone would not be sufficient to entitle the appellant to the annulment of the marriage contract, the record containing no other satisfactory evidence thereof. See O'Reilly v. O'Reilly, 120 Neb. 720, 234 N. W. 916.

That such evidence, under the situation as here disclosed, is not competent for our consideration has been

fully, and we think properly, determined by this court.

We said in Schmidt v. State, 110 Neb. 504, 194 N. W. 679: "The question is thus fairly presented whether a child born in wedlock can be proved to be a bastard by the testimony or declaration of the wife. In the early history of jurisprudence the rule upon this question swayed back and forth. It will serve no useful purpose to enter upon a discussion of the ancient rules, and the reasons given therefor. They can readily be found in any of the standard text-books on evidence. We think the rule settled by the weight of decisions in this country is that a child born in wedlock is presumed to be the legitimate offspring of the husband and wife, and this is so even though the birth of the child happened so soon after the marriage as to render it certain that it was the result of coition prior thereto. This rule is based in the main upon the reason that to permit such testimony would be against public policy. The following cases support this rule: Dennison v. Page, 29 Pa. St. 420, 72 Am. Dec. 644, and note, p. 649; Wilson v. Babb, 18 S. Car. 59; Zachmann v. Zachmann, 201 Ill. 380; Tioga County v. South Creek Township, 75 Pa. St. 433.

"This presumption of legitimacy may be rebutted by competent proof that the husband had no access to the wife, or that he was absent at such time as in the course of nature the child was begotten; that he was impotent, or other circumstances showing that he could not have been the father of the child."

Then, after discussing the basis for the rule by quoting from 1 Jones, Commentaries on Evidence, § 97, we held: "It is quite clear that, if the wife would not be permitted to testify to facts which would bastardize her child, her declarations could not be used in evidence to prove the same fact."

This same principle has most recently been announced in In re Estate of Oakley, 149 Neb. 556, 31 N. W. 2d 557: "* * * the rule settled by weight of decisions

in this country is that a child born in wedlock is presumed to be the legitimate offspring of the husband and wife. See, Schmidt v. State, 110 Neb. 504, 194 N. W. 679; In re Estate of McDermott, 125 Neb. 179, 249 N. W. 555.

" 'This presumption of legitimacy may be rebutted by competent proof that the husband had no access to the wife, or that he was absent at such time as in the course of nature the child was begotten; that he was impotent, or other circumstances showing that he could not have been the father of the child.' Schmidt v. State, *supra*. See, also, Wright v. Hicks, 12 Ga. 155; Powell v. State, 84 Ohio St. 165, 95 N. E. 660; State v. Lavin, 80 Iowa 555, 46 N. W. 553; Eversley on Domestic Relations (4th ed.), c. VI, p. 582."

When, as here, the husband admits he had intercourse with the wife before their marriage and within the probable period of gestation of the child which is conceived before but born after the marriage, and he is informed of the pregnancy prior thereto he cannot deny its paternity but must submit to the marriage and the presumed paternity of the child.

The appellee's cross-appeal relates itself to that part of the decree denying her a divorce. The provisions of the decree awarding her the custody of the minor child, directing appellant to pay $25 a month for its support and providing him the right of visitation at reasonable times and places are, in effect, a divorce from bed and board as provided by section 42-302, R. S. 1943.

There is no question but what the record contains sufficient evidence to sustain a finding that appellant was guilty of extreme cruelty within the meaning of the provisions of the foregoing statute.

We have said: " 'The trial court is vested with sound discretion in determining whether a divorce from bed and board, or an absolute divorce, should be granted, and in a majority of the cases an absolute divorce is to be preferred.' Wetenkamp v. Wetenkamp, 140 Neb. 392, 299 N. W. 491. See, also, Sutherland v. Sutherand, *supra;*

Phillips v. Phillips, 135 Neb. 313, 281 N. W. 22." Sell v. Sell, 148 Neb. 859, 29 N. W. 2d 877.

In view of the ages of the parties, the circumstances under which the marriage occurred, the brief period of its duration, the charges made in this litigation, the nature of the evidence produced, and the feeling between the families, we do not think a reconciliation will ever be possible. To leave these young people in a legal position where it will not be possible to rehabilitate themselves by establishing a home of their own without such a reconciliation does not seem desirable. We have come to the conclusion that the appellee's prayer for absolute divorce should be granted.

The decree of the trial court is therefore modified by granting appellee an absolute divorce but otherwise affirmed. Costs in this court, including an allowance of $150 to appellee for attorney's fee, are taxed to appellant.

AFFIRMED AS MODIFIED.