CHARLES AUGUST LIND, APPELLEE, V. MATILDA BURKE
ET AL., APPELLANTS.

FILED DECEMBER 8, 1898.    No. 8501.

Illegitimate Children: PATERNITY: ACKNOWLEDGMENT. Writings in-
troduced in evidence examined and determined insufficient as
acknowledgments to fulfill the requirements of that portion of
section 31, chapter 23, Compiled Statutes 1897, which reads as
follows: "Every illegitimate child shall be considered as an heir
of the person who shall, in writing, signed in the presence of a
competent witness, have acknowledged himself to be the father
of such child."

APPEAL from the district court of Hamilton county.
Heard below before BATES, J. *Reversed.*

The opinion contains a statement of the case.

*F. C. Power*, for appellants:

August Lind did not, by writing signed in presence of
a competent witness, acknowledge himself to be the
father of plaintiff, within the meaning of section 31, chap-
ter 23, Compiled Statutes. (*Hunt v. Hunt*, 37 Me. 333;
*Estate of Sanford*, 4 Cal. 12; 24 Am. & Eng. Ency. Law

54

414; *Cope v. Cope*, 137 U. S. 682; *Pratt v. Atwood*, 108 Mass. 40; *Knight v. New England Worsted Co.*, 2 Cush. [Mass.] 272.)

*George B. France* and *Merton Meeker*, contra:

The purpose of the statute was to enable illegitimate children to inherit their father's estate the same as legitimate children. The statute should be liberally construed. Within the meaning of the statute, August Lind acknowledged himself to be the father of plaintiff. (*Buckmaster v. McElroy*, 20 Neb. 557; *Kearney Electric Co. v. Laughlin*, 45 Neb. 390; *In re Jessup*, 21 Pac. Rep. [Cal.] 976, 22 Pac. Rep. 742; *Blythe v. Ayres*, 31 Pac. Rep. [Cal.] 915; *Crane v. Crane*, 31 Ia. 296; *Bailey v. Boyd*, 59 Ind. 297; *Brock v. State*, 85 Ind. 397; *Rice v. Efford*, 3 Hen. & M. [Va.] 227; *Pina v. Peck*, 31 Cal. 359; *In re Noble*, 124 Ill. 270; *Comb's Appeal*, 105 Pa. St. 159.)

HARRISON, C. J.

The appellee commenced this action to recover an alleged interest in the estate of August Lind, deceased, and it was for appellee pleaded that he was the illegitimate child of August Lind, born in Sweden prior to the time the latter during his life came to America; that appellee had been rendered capable of heirship by an acknowledgment in writing, in the presence of a competent witness, by August Lind of his relationship of father of the appellee. From a decree favorable to the claim of appellee an appeal to this court has been perfected for the adverse parties.

By the common-law rule illegitimate children are excluded from inheritance in the estate of the father (1 Blackstone, Commentaries 458); but in this state we have the following statutory provision on the subject: "Every illegitimate child shall be considered as an heir of the person who shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the

father of such child." (Compiled Statutes 1897, ch. 23, sec. 31.) It is under this portion of our statutes that the appellee asserts the alleged acquired right of heirship to the estate of August Lind, now deceased. It is contended for the appellants that there is contemplated by the statute we have quoted a writing made with the intention then in mind to confer the right, as heir, on the illegitimate child, and in the presence of a witness called for the purpose of acquiring information of the acknowledgment. On the other hand, counsel for appellee insist that an acknowledgment of the fact of paternity, in any writing made for any purpose in the presence of any person competent to testify of the matter, is sufficient to meet the requirements of the law. It is also of the arguments for the appellants that the evidence is insufficient. Within what we think a proper disposition of the litigation herein, as presented in the record, a decision of the first question we have outlined, as urged in argument, is not necessary, if it be conceded—and we do not decide it—that a writing other than a formal acknowledgment of paternity made for the express purpose may be sufficient. There is the further query herein of the sufficiency or lack thereof of the evidence to establish the particular point of the issue tried on which its determination rested and must now depend. We are satisfied that a writing, to fulfill the requirement of the law which we have quoted, must be at least one in which the paternity is directly, unequivocally, and unquestionably acknowledged. Whether it should go further than this, as we have before stated, we need not, and do not now, decide; but so much it must voice to be of force. In the light of this view of the requisites of the evidence we will now refer to such portions of the latter as are pertinent to the matter specifically under consideration.

The appellee was born in Sweden, where August Lind then lived. The latter soon afterward came to the United States and finally became a resident of Hamilton county, this state, and the owner of a tract of land sit-

uate in said county; and also accumulated some considerable personal belongings. For reasons not material to be particularly noticed here August Lind thought best that the appellee should come to this country to live, and with him, August Lind. In pursuance of the thought which, when entertained, became a settled purpose, August Lind purchased the necessary tickets of one McEndree of Lone Tree, now Central City, and forwarded them to parties, his relations, in Sweden, who, in compliance with written directions which accompanied the tickets, started the boy on his journey to this country, where he, in due time, safely arrived and was met at Lone Tree by August Lind, with whom and to whose home he went, and there lived for a time apparently as one of the family. The deposition of McEndree was taken and was read in evidence. He stated in substance that, when August Lind bought the steamship ticket for the transportation of the appellee to this country, he required McEndree to write a letter or statement to be carried by the boy during his trip and shown to people along the route. This was written in the English language and stated from and to where the boy was traveling, and requested that he be assisted in selecting the right vessel and railroad trains. It was written by McEndree, and he attached to it the signature of August Lind, by request of the latter. At the same time and place there was written in Swedish by August Lind a letter to the relatives in Sweden, in which were set forth certain matters relative to the steamship ticket, the statement which the boy was to carry with him, and what he should do when he arrived at Lone Tree. This was dictated by McEndree and, after August Lind had written and signed it, he translated it verbally to McEndree. These instruments, it was shown, were no longer in existence, and McEndree prepared in writing what he stated was in substance their contents respectively, and the prepared articles were attached to his deposition. In an answer to one interrogatory McEndree said: "Yes, sir; he had me write

a letter for him, and he had me sign his name to it, in which he called the plaintiff 'my boy.' The reason I signed his name to it was because the letter was written in English. It contained instructions to guide him in coming from Sweden to Central City, Nebraska. At that time Central City was called 'Lone Tree.'" In cross-examination he stated in regard to reproducing the letters: "I claim that I have given the substance of those letters as near as I can remember; not *verbatim* by a good deal. That is something I could not do. I gave the substance of those letters to the best of my memory." What he gives from memory as written by him, and on which he states he placed the signature of August Lind by request, is as follows:

"To Whom May Make Inquiries of the Bearer, Charles Lind, My Dear Son, who Holds a Steamship Ticket from Sweden to Lone Tree, Nebraska:

"This boy is traveling alone under the management of the Cunard Steamship Co., and whose folks reside in Lone Tree, Nebraska. Who will kindly assist the boy in seeing that he gets the right vessel named on his ticket and railroad train through to Lone Tree, Neb., will confer a great favor on his father, the undersigned,

"AUGUST LIND."

What was given by the witness as the substance of the letter in the Swedish language was as follows:

"DEAR MOTHER: I herewith send you a steamship ticket and letter of advice how to come over here. You may fix up Charles for me, and get him ready, and start him so he will take certain vessel, on certain date, that will put him in New York on certain date. Tell Charles that when he gets at Castle Garden, New York, where all the emigrants arrive, to show the inclosed letter in English and his ticket to the officers who will ask him where he is going. These officers will arrange his railroad ticket, and see that he will be put on his right train that will bring him on through. When you get to Lone

Tree, show the card to any one at the depot, and they will show you William McEndree's store. Go there. Mr. McEndree will take care of you, if I am not in town.

"AUGUST LIND."

It will be noticed that in the latter letter there is nothing which contains a reference to the boy in the character of a child, or even a relative of the writer. It must be borne in mind in the consideration of these letters that they were but the memory of the witness and were not purported to be correct. The first one quoted contains a reference to the boy as a "son" of the writer. This expression may be used to mean a male child, issue or offspring, but also may be applied to a distant male descendant, or any young male person may be so designated, as a pupil, a ward, an adopted male child or dependent. (Webster's International Dictionary; Century Dictionary.) In it also appears the words "his father." The term "father" may mean the male parent; a male who has begotten a child. It may also mean the adopted father, or a male ancestor more remote than a parent. (Webster's International Dictionary; Century Dictionary.) It must not be forgotten in this examination that it is not because the person can be shown to be the offspring, or is in fact the illegitimate child, that it may assert heirship, but because it has been in writing acknowledged; and hence the writing must be in and of itself sufficient, unaided by extrinsic evidence, to establish the paternity. With the many concurrent significations which belong to the words used and modified as they were, even if they are now as they stood in the original writings,—which is not entirely certain,—the writings cannot be adjudged sufficient to fulfill the statutory requirement.

There were also introduced some lists of all the children of school age in school district No. 65 of Hamilton county, of which August Lind was then director. One was the school census of said district for the school year ending in April, 1877, and the other for the school year

Lind v. Burke.

ending April, 1878, and each was subscribed and sworn to by August Lind before a justice of the peace. The statement in each affidavit was as follows: "August Lind, above named, being duly sworn, says that the following is a correct list of the names of all the children belonging to district No. 65 aforesaid, between the ages of five and twenty-one years, as he verily believes, as taken by him as aforesaid." This shows that it but purports to be a correct list of the children and is not declared to be exact in other particulars. In each, under the heading, "Name of Parent or Guardian," was written names of parties supposedly bearing one or the other relation to the person named directly opposite in the following column of the list, which column was headed, "Names of Youth." As parent or guardian appeared the name of August Lind, and opposite, as youth, "Elvira" and "Charly." These, as proofs, left the matter open as to whether the party named in the first column was parent or guardian, even if sufficient in all other respects,—which is extremely doubtful,—and they did not establish a written acknowledgment such as is requisite under the law.

Another piece of evidence was what on its face or by its recitals purported to be a record, or portion of a record, of a school meeting held in said district 65 on April 2, 1877. It is not signed by any one, but some witness stated it was written, or he saw it prepared, by August Lind, and in it there appears the statement:

"August Lind, Parent.

"Charly ........................12          13

"Elvira ........................—          6"

The lack of signature constitutes this incompetent and insufficient as proof of the acknowledgment prescribed by the law.

It follows that the decree was not sustained by the evidence; hence it must be reversed and the action dismissed.

REVERSED AND DISMISSED.