IN RE ESTATE OF JOHN W. WINSLOW.
JAHUGH WINSLOW ET AL., APPELLANTS, V. IDA BELLE WARRINER, APPELLEE.

FILED APRIL 26, 1927. No. 24802.

1. **Bastards:** LEGITIMATION. At common law, an illegitimate child cannot inherit property from his father, but in this state, by virtue of section 1228, Comp. St. 1922, such a child may be legitimated and inherit from his father when the latter shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child.
2. ———: ———. Such an acknowledgment need not be in a formal paper, executed for the specific purpose, but may be contained in a letter, provided the father unequivocally ac-

knowledges therein his paternity of the illegitimate child, and signs the written acknowledgment in the presence of a competent witness.

3. ———: ———. The signature to such acknowledgment need not be actually written in the handwriting of the father, but is sufficient if he directs another to sign his name thereto.

4. Signatures. Where a person's name is signed to an instrument for him, at his direction and in his presence, by another, the signature becomes his own.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Pratt, Hamer & Beynon,* for appellants.

*C. P. Anderbery* and *Snyder & Snyder, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOOD, J.

This is an action to determine whether the estate of John Woolman Winslow, deceased, who died intestate, never having been married, shall descend to his collateral kindred or to Ida Belle Warriner, who claims to be an illegitimate daughter of said Winslow, and that she has been legitimated by his action so as to be entitled to inherit. The district court found that Mrs. Warriner was born an illegitimate daughter of Winslow, and that she had been legitimated by his action, and entered judgment, adjudging her to be the sole heir of his estate.

Under the common law, an illegitimate child could not inherit from his father. In this state, by virtue of the provisions of section 1228, Comp. St. 1922, such a child, under certain prescribed conditions, may inherit from his or her father. That section provides *inter alia*: "Every illegitimate child shall be considered as an heir of the person who shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as an heir of his mother, and shall inherit his or her estate in whole or in

In re Estate of Winslow.

part as the case may be, in the same manner as if he had been born in lawful wedlock."

Counsel for Mrs. Warriner contend that the facts disclosed show that Mr. Winslow in his lifetime, in writing, signed in the presence of a competent witness, acknowledged himself to be the father of Mrs. Warriner; and counsel for the collateral kindred strenuously urge that the facts disclosed in the record do not show a compliance with the statute.

It is established beyond question that Mrs. Warriner was an illegitimate daughter of Winslow. There are certain letters, in his handwriting, which were addressed to and received by Mrs. Warriner, and in which he addressed her as "Dear daughter" and signed himself "Your loving father, J. W. Winslow." It is also established that Mr. Winslow became nearly blind and could not see to write; that he procured one Mrs. Peebles to write three letters for him to Mrs. Warriner. These letters were written at the dictation of Mr. Winslow in his presence. They were addressed to Ida Belle Warriner, and therein the salutation was "Dear daughter," or "Dear daughter and children," and the letters ended: "Your loving father, J. W. Winslow." These letters, written by himself, and also the ones written by Mrs. Peebles at his dictation, contain an unequivocal acknowledgment that he is the father of Mrs. Warriner. There is the written acknowledgment. The only question is whether these letters were signed in the presence of a competent witness. That the letters written by himself were signed by him is clearly established, but the evidence as to whether it was done in the presence of a competent witness is not as clear as could be desired. The record shows that one William Winslow, a cousin of the deceased and one of his collateral kindred, who would be entitled to inherit unless Mrs. Warriner is properly adjudged to be his sole heir, for a number of years lived in the home of decedent. He testified, apparently with some reluctance, that several of the letters in question are in the handwriting of John W. Winslow;

that Winslow wrote them, and that the witness read a number of the letters after they were written. He testified that after they were written they were handed to him by Winslow for him to read. In answer to another question, he said that no part of the letters was in his handwriting, and that there was no one present except himself and Winslow. Taking his evidence as a whole, we think a fair inference is that the letters were written and signed by Winslow in his presence. If such be the fact, then there is a compliance with the statute which would legitimate Mrs. Warriner and entitle her to inherit.

With reference to the letters written by Mrs. Peebles, the evidence discloses that she was present, took the dictation of Mr. Winslow, and that after she had done so she, in each instance, read the letter over to Winslow, including the address, the salutation and the signature, above which were the words, "Your loving father." A sister of Mrs. Peebles was also present when one of these letters was written, and she heard it read, including the salutation and the signature, and knew that it was read to Mr. Winslow. The letter, as a whole, was written at his instance and request. After it had been written and read to him it was sealed in an envelope and Winslow, himself, took the letter and deposited it in a United States mail box.

The statute requires the acknowledgment to be signed in the presence of a competent witness, but that does not necessarily mean that the actual writing of the signature shall be made by the father. If one is disabled by reason of crippled hands or defective eye-sight so that he cannot write, no one would contend that it would be impossible for him to comply with the statutory provision. He may direct another to write his name, and when he does so the signature is as much his own as though he had held the pen which wrote his name. "Where a person's name is signed for him, at his direction and in his presence, by another, the signature becomes his own." 36 Cyc. 451. Winslow requested Mrs. Peebles to write the letter for him. He intended, as

evidenced by his act in depositing the letter in the mail box, that it should be sent to Mrs. Warriner. Inferentially and in effect, Winslow requested Mrs. Peebles to write his name. Moreover, he ratified and adopted her writing as his signature, and did so intentionally. The signature was appended in his presence and, as to one of the letters, in the presence of both Mrs. Peebles and her sister.

The evidence fully justifies the finding of the district court that Winslow did, in writing, in the presence of a competent witness, acknowledge himself to be the father of Mrs. Warriner. He thereby legitimated her as his daughter, and she is entitled to inherit his estate.

The judgment of the district court is therefore

AFFIRMED.