PAUL CROSS, APPELLEE, V. ALBERT J. THEOBALD, COUNTY TREASURER, APPELLANT: STATE, EX REL. RICHARD C. HUNTER, ATTORNEY GENERAL, INTERVENER, APPELLANT.

280 N. W. 841

FILED JULY 1, 1938. No. 30407.

*Richard C. Hunter,* Attorney General, *Edwin Vail, Harry S. Grimminger* and *Edmund P. Nuss,* for appellants.

*J. E. Ray, contra.*

Heard before ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and KROGER, District Judge.

KROGER, District Judge.

Paul Cross, as relator, filed his petition and affidavit for mandamus against Albert J. Theobald, county treasurer of Adams county, Nebraska, setting out that on September 1, 1937, he was the holder of a valid unrevoked motor vehicle operator's license issued by the state of Nebraska; that on December 11, 1937, he made application to the director of motor vehicles for an operator's license pursuant to chapter 141, Laws 1937; that his application was approved and said director and his agents gave relator a certificate certifying that he had complied with all of the requirements of the law and was entitled to an operator's license; that on December 14, 1937, relator took said certificate, together with the motor vehicle operator's license which he held on September 1, 1937, presented the same to the respondent as county treasurer of Adams county, Nebraska, together with a fee of 75 cents, and demanded a motor vehicle operator's license as provided by law; that the respondent, as such treasurer, demanded a fee of one dollar and refused to issue a license for 75 cents. Relator alleged that, notwithstanding the fact that he had fully complied with all the requirements of the law, he has been prevented and denied the right to operate a motor vehicle within the state of Nebraska, that he had no adequate remedy at law, and prayed for an alternative writ to issue. Alternative writ was allowed, and on the day set to show cause the state of Nebraska was permitted to intervene in said action, and thereupon filed a demurrer, which was overruled, and leave was granted to file answer. The answer of the respondent, Albert J. Theobald, county treasurer, admits the allegations of relator's petition and the writ of mandamus, and alleges that he demanded a fee of one dollar from the relator because he was informed by the state authorities that the proper fee in such cases was one dollar, and further alleges that he made such charge and demand in good faith. The

answer of the state of Nebraska, as intervener, denies the allegations contained in the petition and writ, and for affirmative answer alleges that from and after December 1, 1937, the correct and proper fee under the law was one dollar. Trial was had to the court on the issues thus joined and the facts were found to be as set out in relator's petition, and the trial court found the proper fee to be 75 cents and entered judgment accordingly. From the overruling of the motion for new trial this appeal is prosecuted.

The first assignment of error is that mandamus is not the proper remedy for the reason that relator had an adequate remedy at law, the claim being made that relator could have paid the amount demanded under protest and then filed his claim under the provisions of section 77-1923, Comp. St. 1929. The answer to that contention is that the fee prescribed for the issuance of a motor vehicle operator's license is not a tax payable to the county, but according to the provisions of section 17, ch. 141, Laws 1937, all except five cents thereof is remitted by the county treasurer to the state treasurer to be credited to the "Motor Vehicle Operator's License Fund."

It was further argued that the relator prosecuted this action in his individual capacity instead of in the name of the state of Nebraska, and therefore the writ should have been denied. During the argument of this case, the respondent waived any error, if error there was, with reference to the manner in which the action was brought, and the state of Nebraska, as intervener, is not in position to complain.

This leaves but one question which was the real issue presented to the trial court, and that is the proper fee which the county treasurer was entitled to demand from the relator before issuing to him a motor vehicle operator's license.

We have carefully examined chapter 141, Laws 1937, and find that in section 16 thereof applicants for operators' licenses are placed in two classes. In class one are all of those who held operators' licenses on September 1, 1937, the effective date of the act. In class two are all other ap-

plicants. It is further provided that the county treasurer shall collect a fee of 75 cents from each applicant in class one and a fee of one dollar from each applicant in class two. At no place in the entire act do we find any provision whereby this classification or the fee to be collected is in any manner changed. But it is argued by the attorney general that because section 28 of the act provides that "This act shall take effect on the first day of September, 1937, and ninety days thereafter shall be allowed for pro-. curing of licenses," all those who failed to obtain their licenses within the ninety-day period lost whatever rights they had under the old operator's license and became a part of class two. Had the legislature intended what the attorney general is now contending for, it would have been a simple matter to have so stated. There is no ambiguity in the provision as written, and it clearly shows an intention to collect 75 cents per applicant from all of those holding operators' licenses as of September 1, 1937, and to collect one dollar from all those applying for operators' licenses who did not have a license on September 1, 1937. Section 28 does not purport, in any manner, to change the license fee, but postpones the date after which the driver of a motor vehicle could be prosecuted for operating the same without an operator's license. There is nothing in the act from which the court would be justified in drawing the inference that the legislature intended, after the ninety-day period, that a higher fee be charged those holding operators' licenses on September 1, 1937.

"A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application." 25 R. C. L. 957, sec. 213. See *State v. First State Bank of Alliance,* 122 Neb. 502, 240 N. W. 747.

"Where the language of a statute is clear and unambiguous it should be given effect according to its plain terms." *Gibson v. Peterson,* 118 Neb. 218, 224 N. W. 272.

"When the language of a statute is clear and unam-

biguous, courts will not by construction usurp the function of the law-making body and give it a meaning not intended or expressed by the legislature." *State v. Bishop*, 123 Neb. 481, 243 N. W. 658.

The judgment of the trial court was right and is

AFFIRMED.