JOHN PEETZ, JR., ADMINISTRATOR OF THE ESTATE OF MARVIN L. HAGLER, DECEASED, APPELLEE, v. MASEK AUTO SUPPLY COMPANY, INC., A CORPORATION, APPELLANT, IMPLEADED WITH BEKINS VAN LINES COMPANY, A CORPORATION, APPELLEE.

74 N. W. 2d 474

Filed January 20, 1956. No. 33632.

Neighbors & Danielson, Chambers, Holland & Groth, and Orie C. Adcock, for appellant.

Maupin & Dent, Martin, Davis & Mattoon, and Richard W. Satterfield, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This case was presented to this court and after hearing an opinion was adopted. The opinion was reported as Peetz v. Masek Auto Supply Co., 160 Neb. 410, 70 N. W. 2d 482. The case was later considered on motion for rehearing. In the light of this later consideration the conclusion has been reached that the opinion adopted

is erroneous in some of its material aspects. Accordingly it is withdrawn and the following adopted as the opinion of the court.

It appears proper to point out here that the statement of facts in the former opinion accurately and fully reflects the evidence as it appears in the record to the extent of its pertinence to the theory on which the previous opinion was written. Since, however, the present opinion adopts a view opposite to the one announced in the former opinion it becomes necessary to consider facts not considered or necessary to be considered previously. In this light it appears advisable and expedient to cause this opinion to contain its own statement of facts rather than to adopt a statement from the former opinion.

This is an action for damages in three causes of action commenced in the district court by John Peetz, Jr., administrator of the estate of Marvin L. Hagler, deceased, plaintiff and appellee, against Masek Auto Supply Company, Inc., a corporation, defendant and appellant. The Bekins Van Lines Company, a corporation, was a defendant in the district court and is an appellee here. Apparently Bekins Van Lines Company and Bekins Van and Storage Company are one entity. They have been so treated by all parties throughout these proceedings. They will therefore be so treated herein and will be hereinafter referred to as Bekins. There was not and is not now any claim that damages may be recovered against Bekins in this action. Its only interest is to protect its legal right of subrogation. It therefore will not be further referred to as a party to the action.

The salient facts of which the action is an outgrowth are that on June 11, 1953, at about 5 p. m. on U. S. Highway No. 30, a few miles west of Sidney, Nebraska, Marvin L. Hagler was operating a tractor truck with a trailer in an easterly direction. The truck belonged to him and the trailer belonged to Bekins. He was at the time employed by this company and was engaged in

the performance of service for it. At that time Kenneth J. Conner was operating an automobile in a westerly direction on this highway. The automobile was his own. The two vehicles collided practically head-on and both drivers were killed.

John Peetz, Jr., was appointed administrator of the estate of Marvin L. Hagler and in that capacity he instituted this action. By his petition the plaintiff alleged that the death of Hagler was caused by the negligence of Conner. He alleged further that at the time Conner was employed by the defendant and engaged in the performance of service in its behalf and that thus the negligence of Conner was attributable to it.

By the first cause of action the plaintiff sought a recovery for the benefit of the next of kin of Hagler, by the second he sought to recover for funeral expenses, and by the third he sought to recover for damages to Hagler's truck.

Insofar as necessary to denominate here the alleged next of kin were Michael Dennis Hagler and David Lee Hagler, two minor children of Marvin L. Hagler, born out of wedlock, which children the plaintiff contends were legitimated in such manner as to permit action to be maintained for their benefit.

Issues were joined and a trial was had to a jury. No general verdict was returned. Pursuant to instructions by the court a special verdict was returned on a form prepared and presented by the court. The form contained some questions propounded without answers. The jury answered all questions requiring answer. The form contained other questions with answers thereto by the court. The form with the answers of the jury and those of the court was returned as the verdict of the jury.

The propriety of this manner of submission or this type of verdict is not attacked by assignment of error, hence it will not be considered herein.

Pursuant to this submission the jury found by its

answers that Conner was an employee of the defendant; that at the time of this occurrence he was acting within the scope of his employment; that Conner was guilty of negligence which was the proximate cause of the collision; that Hagler was not guilty of any negligence which was the cause or proximately contributed to the collision; that Michael Dennis Hagler and David Lee Hagler were dependent upon Marvin L. Hagler for contributions to their support; that Marvin L. Hagler would have contributed on the average each year for 19 years to Michael Dennis Hagler $1,136 and to David Lee Hagler for 17 years $1,165; and that the reasonable value of the damage to the truck was $925. By adoption of the answers to questions made by the court the jury found that Michael Dennis Hagler and David Lee Hagler were the next of kin of Marvin L. Hagler; that the reasonable rate of return upon investments in Cheyenne County, Nebraska, was 4 percent; and that the reasonable value of the funeral expense was $928.30.

Following the rendition of verdict a motion for judgment notwithstanding the verdict or in the alternative for new trial was filed by the defendant. This motion was overruled after which judgment was rendered on the first cause of action for $29,093.15, on the second cause of action for $928.30, and on the third cause of action for $925, with the total of the three amounting to $30,946.45. The appeal here is from this judgment.

As grounds for reversal the brief of defendant contains six assignments of error. The first is that the court erred in not holding as a matter of law that Conner was an independent contractor. The second is that the court erred in admitting exhibit 15 in evidence. The third is that the court erred in holding that Marvin L. Hagler had legitimated Michael Dennis Hagler and David Lee Hagler and in failing to hold that they had not been legitimated. The fourth is that the court erred in failing to hold that the verdict was the product of passion, prejudice, mistake, or some other means not

apparent in the record, or that the jury disregarded the evidence or rules of law. The fifth is that the court erred in requiring the jury to find specially as to the damage, if any, sustained severally by Michael Dennis Hagler and David Lee Hagler. The sixth is that the court erred in failing to sustain defendant's motion for judgment notwithstanding the verdict.

The subject of the first assignment of error was considered at length in the former opinion and the conclusion reached therein was adverse to the defendant. We have found no basis for a departure from that conclusion.

By this assignment of error the defendant substantially contended that the evidence was insufficient upon which to submit to the jury the question of whether or not Conner was an employee of the defendant and at the time was in pursuit of its business rather than an independent contractor.

In the former opinion it was said: "Where the inference is clear that there is, or is not, a master and servant relationship, the determination is made by the court; otherwise the jury determines the question after instruction by the court as to the matters of fact to be considered. Restatement, Agency, § 220, p. 483. See, also, Thurn v. La Crosse Liquor Co., 258 Wis. 448, 46 N. W. 2d 212."

The following was also stated therein: "Each case must be determined with a view to the surrounding facts and circumstances, the character of the employment, and the nature of the wrongful act. Whether the act was or was not such as to be within the scope of his employment is, ordinarily, one of fact for the determination of the jury. See, Dafoe v. Grantski, 143 Neb. 344, 9 N. W. 2d 488; LaFleur v. Poesch, 126 Neb. 263, 252 N. W. 902; 35 Am. Jur., Master and Servant, § 553, p. 986."

Following these statements of principle and a review of the evidence relating to this subject, which review we deem unnecessary to repeat herein, the conclusion

reached was that the question presented was one for determination by the jury. Nothing has been presented here which convinces that the conclusion there reached was wrong. Accordingly it must be said that the assignment of error is without merit.

The second and third assignments of error require consideration together. As already pointed out Michael Dennis Hagler and David Lee Hagler are claimed to be next of kin of Marvin L. Hagler. This claim is based upon the contention that they are children of Marvin L. Hagler born out of wedlock but who have acquired the right to be considered heirs by reason of action of Marvin L. Hagler in his lifetime as prescribed by section 30-109, R. R. S. 1943. The pertinent portion of the section is as follows: "Every child born out of wedlock shall be considered as an heir of the person who shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, * * *."

In the state of the record herein the plaintiff is not entitled to prevail on the first cause of action unless the evidence is sufficient to entitle Michael Dennis Hagler and David Lee Hagler to be considered heirs within the meaning of the quoted statutory provision. There appears to be no dispute about this.

The burden therefore devolves upon the plaintiff to establish that (1) the children were born out of wedlock, (2) that Marvin L. Hagler is their father, and (3) that the father recognized them as his children agreeable to the requirements of the statute. In re Estate of Oakley, 149 Neb. 556, 31 N. W. 2d 557.

The first and second of these elements of proof have been established clearly and distinctly without contradiction. Exhibit 15 is an instrument which the plaintiff asserts establishes the third element. The exhibit is an application by Marvin L. Hagler for employment by Bekins. It contains a statement of the personal record of Hagler in his handwriting on a form furnished by Bekins.

In response to the following in print on the form: "Names, ages, relationship and address of any persons dependent on you for support or to whose support you are contributing" he wrote: "Ruby Hagler - Wife age 26. 2 Sons. David Lee & Michel Dennis Hagler. age 2 - 1 yr." The instrument was signed by him "Lee Hagler." It is made clear that the person signing as Lee Hagler was the same person as the Marvin Lee Hagler who was killed in the accident involved in this case. The signing of the instrument was in the presence of R. Lowell Johnson.

The question presented by the second and third assignments of error is that of whether or not this exhibit is sufficiently an acknowledgment by Marvin L. Hagler of the fatherhood of Michael Dennis Hagler and David Lee Hagler to entitle them to be considered as his heirs.

The formal insufficiency of the instrument is not stressed on this appeal and therefore it will not be considered herein. The only question to be considered is the substance of the declaration by Marvin L. Hagler.

A principle declared applicable in reference to an acknowledgment of the father of a child born out of wedlock is that it must be one in which the paternity is directly, unequivocally, and unquestionably acknowledged. Lind v. Burke, 56 Neb. 785, 77 N. W. 444. See, also, Moore v. Flack, 77 Neb. 52, 108 N. W. 143.

In Lind v. Burke, *supra,* it was said: "* * * the writing must be in and of itself sufficient, unaided by extrinsic evidence, to establish the paternity." This statement was approved in Moore v. Flack, *supra.* Thus according to the pronouncement in these cases the office of the statutory provision is dual.

The former of these two statements has never been disapproved by this court. The latter may be said to have been disapproved although not by reference thereto in Thomas v. Estate of Thomas, 64 Neb. 581, 90 N. W. 630. In that case we think it was indicated that the office of the statute is single and not dual and involves only the

sufficiency of a writing in acknowledgment of paternity of a child born out of wedlock. In the opinion it is said as to the office of the statute: "If no more is asked of this son than the statute by its terms requires, he is entitled to a share of his father's estate if the evidence given and offered on his behalf is true. * * * Such we conclude it is."

The court, in the case of In re Estate of Winslow, 115 Neb. 553, 213 N. W. 819, without citation of earlier cases, effectually accepted the statute literally and substantially concluded that it was satisfied if there was a statement by a father, in writing, signed in the presence of a competent witness, acknowledging paternity. In the opinion it was said: "The evidence fully justifies the finding of the district court that Winslow did, in writing, in the presence of a competent witness, acknowledge himself to be the father of Mrs. Warriner. He thereby legitimated her as his daughter, and she is entitled to inherit his estate."

There cannot be said to be any ambiguity in the statute or the instrument here involved. The terms of both are clear and specific. The applicable rule as to statutes in such circumstances is that where a law is plain and certain in its terms, and free from ambiguity, a reading suffices, and no interpretation is needed or proper. See, State ex rel. School Dist. v. Moore, 45 Neb. 12, 63 N. W. 130; Shamp v. Landy Clark Co., 134 Neb. 73, 277 N. W. 802; Cross v. Theobald, 135 Neb. 199, 280 N. W. 841; City of Grand Island v. Willis, 142 Neb. 686, 7 N. W. 2d 457; State ex rel. Smith v. Nebraska Liquor Control Commission, 152 Neb. 676, 42 N. W. 2d 297; Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409; City of Wayne v. Adams, 156 Neb. 297, 56 N. W. 2d 117.

As to written documents the rule appears to be that when construing a writing it is the duty of the court ordinarily to give to the words used their ordinary and popularly accepted meaning in the absence of explanation or qualification. This is the rule with reference to instruments constituting a contract. See O'Shea v. Smith, 142

Neb. 231, 5 N. W. 2d 348. It is also the rule to be applied in the interpretation of wills. See Brandeis v. Brandeis, 150 Neb. 222, 34 N. W. 2d 159. No reason is apparent as to why any other rule should apply to a writing such as is involved here.

. The conclusion in this connection therefore is that to the extent that Lind v. Burke, *supra,* and Moore v. Flack, *supra,* hold that a writing in order to satisfy the requirements of section 30-109, R. R. S. 1943, must be in and of itself sufficient, unaided by extrinsic evidence, to establish paternity, they are overruled.

It is concluded that, as was declared in Lind v. Burke, *supra,* a writing to satisfy the requirements of the statute should be one in which the paternity is directly, unequivocally, and unquestionably acknowledged.

Exhibit 15 in this case appears to meet the test of the statute and the decisions. The inescapable purport of the exhibit is: Dependent upon me for support are two sons. Their names are David Lee and Michael Dennis Hagler. Their ages are respectively 2 years and 1 year. The exhibit was signed in the presence of a competent witness.

It is difficult to perceive how paternity could be acknowledged more directly. It is difficult to see wherein equivocation may be attributed to the acknowledgment. It is likewise difficult to see how the acknowledgment may be regarded as questionable. We conclude that exhibit 15 did satisfy the requirements of the statute.

It may well be said that this decision on the facts is not consistent with similar facts involved in Lind v. Burke, *supra,* but that ought not to deter a proper decision in this case.

It may also be said that it conflicts with certain statements contained in the case of In re Estate of Oakley, *supra.* In the opinion in that case it was stated that insurance applications signed in the presence of a witness were insufficient as acknowledgment of paternity under the statute.

In view of the clear proof of illegitimacy and paternity

here and the conclusion as to the quality of exhibit 15 it must be said that assignments of error 2 and 3 are without merit.

The fourth assignment of error challenges the sufficiency of the evidence to sustain the amount of damage awarded as to the first cause of action. The substantial contention is that the verdict is excessive and exorbitant and that this is apparent on the face of the record, and accordingly it should be vacated and set aside.

The rule to be applied in the determination upon this assignment is the following: "A verdict may be set aside as excessive by the trial court or on appeal only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or it is clear that the jury disregarded the evidence or rules of law." Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612. See, also, Banta v. McChesney, 127 Neb. 764, 257 N. W. 68; Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186; Dunn v. Safeway Cabs, Inc., 156 Neb. 554, 57 N. W. 2d 75.

From an examination of the evidence in the light of this rule it becomes clear that this assignment must be sustained and a new trial granted on the first cause of action. Neither the special findings of the jury as to the probable contributions of Marvin Lee Hagler to Michael Dennis Hagler and David Lee Hagler nor the judgment entered thereon find support in the evidence.

As already pointed out the jury by its verdict found that Marvin Lee Hagler, had he lived, would have contributed an average annual amount for the two children of $2,301 for 17 years and $1,136 for one for an additional 2 years.

Hagler was first employed by Bekins about December 27, 1952. He continued in that employment until the time of his death. The information as to his employment theretofore is meager. There is none as to his earning capacity except for a period of 1 year when he

was engaged in farming. He appears to have closed out the operation at which time he had $900. For the period he worked for Bekins he received $4,867.52 mileage earnings. This was paid on the basis of 18.8 cents a mile while on the road and $12 a day for any full 24-hour layover period. In addition he received $521.54 as hourly pay for loading and unloading. According to studies made by Bekins about two-thirds of the mileage paid was used up by Hagler in expense of operation. This was a burden he was required to bear.

On the basis of this evidence Hagler had received a total net income for the period from about December 27, 1952, to June 11, 1953, of approximately $2,150. There is no evidence justifying a reasonable inference that he would in the future succeed to a substantially higher rate of compensation.

As to the actual contributions Ruby Hagler, the mother of the two children and the person in charge of the household, testified that Hagler's contribution to the support of the household was about $250 a month. This was for four people when Hagler was away and five when he was at home. She further testified that his contribution for the two boys was about $50 each.

It was in the light of this evidence that the jury returned its verdict.

It is reasonably inferable that after the verdict was returned the court computed the total for the period or periods involved and then ascertained its present value in conformity with a formula stipulated and agreed to by the parties as disclosed by the bill of exceptions, and rendered judgment in that amount.

It appears obvious that a verdict and judgment based on a theory that Hagler probably would have contributed any such amounts as indicated finds no support in the evidence. It clearly appears that the evidence and appropriate rules of law were disregarded.

By the fifth assignment of error it is urged that it was improper to require the jury to separately find

specially the damage, if any, sustained by Michael Dennis Hagler and David Lee Hagler.

The theory is not that a special finding should not have been made, nor is it the theory that damage separately for the two was not proper to be considered by the jury, but only that there should not have been a separated finding in the verdict. The cases cited in support of the contention are In re Estate of Lucht, 139 Neb. 139, 296 N. W. 749, and Tate v. Barry, 144 Neb. 517, 13 N. W. 2d 879.

The argument in support of the theory as we interpret it is that in a case such as this, prosecuted pursuant to authority of section 30-810, R. R. S. 1943, the ultimate distribution of a judgment recovered is made by the county court, therefore it is improper to require a jury in the district court to specifically find the amount of damage to individuals.

Neither the cases cited nor the statute supports the contention. It is true that the distribution in cases such as this is made through the county court but it is a function of the district court to ascertain the amount to be distributed. In the statutory provision (section 30-810, R. R. S. 1943) the following appears: "The verdict or judgment should be for the amount of damages which the persons in whose behalf the action is brought have sustained. The avails thereof shall be paid to and distributed among the widow or widower and next of kin in the proportion that the pecuniary loss suffered by each bears to the total pecuniary loss suffered by all such persons."

It is a contradiction to the specific terms of the statute to say that the verdict should be for the amount of damages which the persons in whose behalf the action is brought have sustained and at the same time to say that the jury may not ascertain specifically under proper instructions the amounts of damage to particular persons.

We conclude therefore that the fifth assignment of error is without merit.

By the sixth and last assignment of error the defendant urges that a judgment notwithstanding the verdict should have been rendered in its favor.

In the light of what has been said herein it is clear that our conclusion is that as to the first cause of action defendant is not entitled to a judgment in its favor notwithstanding the verdict but is entitled to a new trial.

As to the second and third causes of action the only observable basis for a contention that the defendant is entitled to a judgment notwithstanding the verdict is the contention that the verdict of the jury finding that Conner was employed by the defendant and was at the time in the pursuit of his master's business was not sustained by the evidence. This contention has been decided herein adversely to the defendant. The assignment is therefore without merit.

The decision arrived at is that the judgment on the first cause of action should be and it is reversed and the cause of action remanded for a new trial. The judgment on the second and third causes of action should be and it is affirmed.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.

SIMMONS, C. J., dissenting.

The youngsters involved in this litigation are in no wise responsible for the fact that they were born out of wedlock. Their problem is not new.

As the law has developed, that relates to their situation here, they have no actionable rights save as given by statute.

If this court had legislative powers I would not hesitate to vote for legislation granting children, born as these were, the rights which the majority opinion accords, but we do not have that legislative power.

The rule of construction which the court follows here is expressed in as broad and general language as is the

statute. In its application it also requires construction.

This is not a case of first impression here.

Beginning with Lind v. Burke, 56 Neb. 785, 77 N. W. 444, we stated the rule. In that case and in subsequent decisions we set out the guideposts, factually, that must appear to invoke the benefits of the statute. That rule and its application was followed in Moore v. Flack, 77 Neb. 52, 108 N. W. 143, wherein we recited that it was a "rule of strict construction of writings of this nature." It was followed again in Van Hove v. Van Hove, 94 Neb. 575, 143 N. W. 815. See Van Hove v. Van Hove, 96 Neb. 484, 148 N. W. 152, for additional facts. Those decisions have not heretofore been overruled.

The acknowledgment shown in Thomas v. Estate of Thomas, 64 Neb. 581, 90 N. W. 630, clearly meets the test of the statute and the rule as theretofore applied.

In re Estate of Winslow, 115 Neb. 553, 213 N. W. 819, may be said to be at variance with our other decided cases. The majority point out correctly that this case was decided "without citation of earlier cases." The earlier cases were cited to the court and were ignored. They were not overruled. The court then allowed the "earlier cases" to stand unmentioned. The Winslow decision is one of those rare ones where hard facts were allowed to control over the established construction of the statute.

Lind v. Burke, *supra,* was decided in 1898.

We have held: "An interpretation given to a statutory or constitutional provision by the court of last resort becomes a standard to be applied in all cases, and is binding upon all departments of government, including the Legislature." Board of Educational Lands & Funds v. Gillett, 158 Neb. 558, 64 N. W. 2d 105.

In Patterson v. Kerr, 127 Neb. 73, 254 N. W. 704, we cited with approval this rule: "The doctrine of stare decisis applies with full force to decisions construing statutes, especially where they have been long acquiesced in."

This statute as construed and applied has been acquiesced in by the Legislature these many years.

The construction, by application which we have placed on the statute, should not be disturbed except by legislative action.

MESSMORE, J., dissenting.

I respectfully dissent from that part of the majority opinion which interprets section 30-109, R. R. S. 1943, specifically the part thereof as follows: "Every child born out of wedlock shall be considered as an heir of the person who shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, * * *."

The burden devolves upon the plaintiff to establish that (1) the children were born out of wedlock, (2) that Marvin L. Hagler is their father, and (3) that the father recognized them as his children in accordance with the statute. In re Estate of Oakley, 149 Neb. 556, 31 N. W. 2d 557.

The first and second of these elements of proof have been established. Thus, the third element of proof is directly involved in this case.

In Peetz v. Masek Auto Supply Co., 160 Neb. 410, 70 N. W. 2d 482, exhibit No. 15 was received in evidence. It is an application by Marvin L. Hagler for employment by Bekins Van and Storage Company. The following is the pertinent part thereof: "Names, ages, relationship and address of any persons dependent on you for support or to whose support you are contributing." He wrote: "Ruby Hagler - Wife age 26. 2 Sons. David Lee & Michel Dennis Hagler. age 2-1 yr." The instrument was signed "Lee Hagler" in the presence of Bekins' personnel officer.

Ruby Hagler was not the wife of Lee Hagler. David Lee and Michael Dennis Hagler were born out of wedlock.

Under the authority of Lind v. Burke, 56 Neb. 785, 77 N. W. 444, and also Moore v. Flack, 77 Neb. 52, 108 N.

W. 143, we determined that all Hagler signed was an application for employment setting forth whom he deemed to be his dependents, and that exhibit No. 15 was insufficient under section 30-109, R. R. S. 1943, to prove that the alleged father legitimated the two children, the subject of this action, for the reason that exhibit No. 15 was not an express, unequivocal, and unquestionable acknowledgment of the paternity of the illegitimate children that would make proper compliance with the statute.

In the majority opinion this court said: "A principle declared applicable in reference to an acknowledgment of the father of a child born out of wedlock is that it must be one in which the paternity is directly, unequivocally, and unquestionably acknowledged." Lind v. Burke, *supra;* Moore v. Flack, *supra.* The court went on to say: "In Lind v. Burke, *supra,* it was said: '* * * the writing must be in and of itself sufficient, unaided by extrinsic evidence, to establish the paternity.' This statement was approved in Moore v. Flack, *supra.*" The court concluded: "* * * that to the extent that Lind v. Burke, *supra,* and Moore v. Flack, *supra,* hold that a writing in order to satisfy the requirements of section 30-109, R. R. S. 1943, must be in and of itself sufficient, unaided by extrinsic evidence, to establish paternity, they are overruled."

It is apparent that primarily to arrive at this conclusion the majority opinion relies on the case of In re Estate of Winslow, 115 Neb. 553, 213 N. W. 819.

Let it be said here that we are dealing with the law as previously determined by this court in interpreting section 30-109, R. R. S. 1943. It cannot be doubted that the principles announced in the cases of Lind v. Burke, *supra,* and Moore v. Flack, *supra,* have been the law in this jurisdiction since December 8, 1898, until now.

I deem it advisable to analyze In re Estate of Winslow, *supra.* This was an action to determine whether the estate of John Woolman Winslow, deceased, who died

intestate, never having been married, should descend to his collateral kindred or to Ida Belle Warriner, who claimed to be an illegitimate daughter of Winslow, and that she had been legitimated by his action so as to be entitled to inherit. Section 1228, Comp. St. 1922, was involved. Insofar as necessary here, it provided as follows: "Every illegitimate child shall be considered as an heir of the person who shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as an heir of his mother, and shall inherit his or her estate in whole or in part as the case may be, in the same manner as if he had been born in lawful wedlock." The evidence established that Winslow became nearly blind and could not see to write. He procured a Mrs. Peebles to write three letters for him to Mrs. Warriner, dictated by him and written in his presence. They were addressed to Ida Belle Warriner, and therein the salutation was "Dear daughter," or "Dear daughter and children," and the letters ended, "Your loving father, J. W. Winslow." These letters, written by himself, and also the ones written by Mrs. Peebles at his dictation, contain an unequivocal acknowledgment that he was the father of Mrs. Warriner. There was the written acknowledgment. The only question was whether these letters were signed in the presence of a competent witness. This evidence was not as clear as could be desired. The record shows that one William Winslow, a cousin of the deceased and one of his collateral kindred, who would be entitled to inherit unless Mrs. Warriner was properly adjudged to be his sole heir, for a number of years lived in the home of the decedent. He testified, apparently with some reluctance, that several of the letters in question were in the handwriting of John W. Winslow; that Winslow wrote them; that the witness read a number of the letters after they were written; and that they were handed to him by Winslow for him

to read. The court said: "Taking his evidence as a whole, we think a fair inference is that the letters were written and signed by Winslow in his presence. If such be the fact, then there is a compliance with the statute which would legitimate Mrs. Warriner and entitle her to inherit." Mrs. Peebles testified that she was present, and took the dictation of Mr. Winslow, and after she did so, read the letters to him, including the address, the salutation, and the signature above which were the words: "Your loving father." A sister of Mrs. Peebles was also present when one of these letters was written. She heard it read, including the salutation and the signature, and knew that it was read to Mr. Winslow. The letter, as a whole, was written at his instance and request. After it had been written and read to him it was sealed in an envelope and Winslow, himself, took the letter and deposited it in a United States mail box. The court said: "The statute requires the acknowledgment to be signed in the presence of a competent witness, but that does not necessarily mean that the actual writing of the signature shall be made by the father. If one is disabled by reason of crippled hands or defective eye-sight so that he cannot write, no one would contend that it would be impossible for him to comply with the statutory provision. He may direct another to write his name, and when he does so the signature is as much his own as though he had held the pen which wrote his name. 'Where a person's name is signed for him, at his direction and in his presence, by another, the signature becomes his own.' 36 Cyc. 451. (The only authority cited in this case.) Winslow requested Mrs. Peebles to write the letter for him. He intended, as evidenced by his act in depositing the letter in the mail box, that it should be sent to Mrs. Warriner. Inferentially and in effect, Winslow requested Mrs. Peebles to write his name. Moreover, he ratified and adopted her writing as his signature, and did so intentionally. The signature was appended in his presence and, as to one of

the letters, in the presence of both. Mrs. Peebles and her sister." He thereby legitimated Mrs. Warriner as his daughter and she was entitled to inherit his estate.

The opinion does not set out the circumstances of the letters written nor the circumstances of those written by Mrs. Peebles. They are, however, set out in the original brief of the appellant on appeal to this court and in the motion for rehearing. I will not state the circumstances of these letters except to say that acknowledgment, if there be such, must be found in the salutation and conclusion. Nowhere in the body of the letters is there even an allusion to the subject of paternity, to say nothing of a direct, unequivocal, and unquestionable acknowledgment thereof. One letter written by the deceased began "Dear daughter" and concluded "Your loving father"; another in his handwriting began "Dear daughter" and concluded "from your uncle"; a third began "Dear daughter" and concluded "your loving granddad"; and the fourth with the salutation "Dear Daughter" and signed simply "J. W. W." I believe it is apparent that had the opinion contained the proper factual situation this court would not have held that it was sufficient compliance with the statute.

In the motion for rehearing in In re Estate of Winslow, *supra,* counsel made a most urgent request of this court to base its opinion on an interpretation of the statute or, in the alternative, to show wherein Lind v. Burke, *supra,* and Moore v. Flack, *supra,* were inapplicable, or at least to distinguish such cases from the case at bar, or overrule the same. This request was ignored. Obviously In re Estate of Winslow, *supra,* constitutes no authority for an interpretation of what is now section 30-109, R. R. S. 1943, and has no applicability to any case involving such section of the statutes.

In Lind v. Burke, *supra,* released December 8, 1898, what is now section 30-109, R. R. S. 1943, was involved. Incidentally, this section of the statute was enacted by the Legislature in 1860, Laws 1860, page 64, the only

change being made therein now appears with reference to children born out of wedlock. This was an action to recover an alleged interest in the estate of August Lind, deceased. The appellee pleaded that he was the illegitimate child of August Lind, born in Sweden prior to the time the latter during his life came to America; and that appellee had been rendered capable of heirship by an acknowledgment in writing, in the presence of a competent witness, by August Lind of his relationship of father of the appellee. From a decree favorable to appellee's contention an appeal was taken. The appellee contended that any writing that is an acknowledgment of the fact of paternity in the presence of any competent person is sufficient to meet the requirements of the law. The court said: "We are satisfied that a writing, to fulfill the requirement of the law * * * must be * * * one in which the paternity is directly, unequivocally, and unquestionably acknowledged." It appeared from the evidence that the appellee was born in Sweden, where August Lind lived. The latter came to the United States and became a resident of Hamilton County, and subsequently the owner of land and considerable personal property. August Lind thought the appellee should come to the United States, and purchased necessary tickets from Mr. McEndree of Lone Tree, now Central City, and forwarded the same to his relatives in Sweden. In compliance with the written directions which accompanied the tickets, his relatives in Sweden started the boy on his journey to the United States. He arrived safely, was met by August Lind, and lived with him for a time apparently as one of the family. McEndree's deposition was taken, and it is in substance as follows: That when August Lind bought the steamship ticket for the transportation of the appellee, he required McEndree to write a letter or statement to be carried by the boy during his trip and shown to people along the route. This letter was written in English and stated from and to where the boy was traveling, and requested that the boy be

assisted in selecting his vessel and railroad trains. This letter was written by McEndree, and attached to it was the signature of August Lind, put there at August Lind's request. As he remembered the letter it was as follows: "To Whom May Make Inquiries of the Bearer, Charles Lind, My Dear Son, who Holds a Steamship Ticket from Sweden to Lone Tree, Nebraska: This Boy is traveling alone under the management of the Cunard Steamship Co., and whose folks reside in Lone Tree, Nebraska. Who will kindly assist the boy in seeing that he gets the right vessel named on his ticket and railroad train through to Lone Tree, Neb., will confer a great favor on his father, the undersigned, August Lind." At the same time a letter was written in Swedish by August Lind to his relatives, which is not relevant.

The court said, in analyzing the above evidence: "It will be noticed that in the latter letter there is nothing which contains a reference to the boy in the character of a child, or even a relative of the writer. * * * The first one quoted contains a reference to the boy as a 'son' of the writer. This expression may be used to mean a male child, issue or offspring, but also may be applied to a distant male descendant, or any young male person may be so designated, as a pupil, a ward, an adopted male child or dependent. (Webster's International Dictionary; Century Dictionary.) In it also appears the words 'his father.' The term 'father' may mean the male parent; a male who has begotten a child. It may also mean the adopted father, or a male ancestor more remote than a parent. (Webster's International Dictionary; Century Dictionary.) It must not be forgotten in this examination that it is not because the person can be shown to be the offspring, or is in fact the illegitimate child, that it may assert heirship, but because it has been in writing acknowledged; and hence the writing must be in and of itself sufficient, unaided by extrinsic evidence, to establish the paternity. With the many concurrent significations which belong to the words used

and modified as they were, even if they are now as they stood in the original writings, * * * the writings cannot be adjudged sufficient to fulfill the statutory requirement."

In Thomas v. Estate of Thomas, 64 Neb. 581, 90 N. W. 630, the dispute related to the construction of section 31, chapter 23, Comp. St. 1901, now section 30-109, R. R. S. 1943. The facts are not too important, except to say that under the same the writing was sufficient to comply with the statutes. It was decided that it was immaterial whether or not the writing was made with intent to constitute heirship by the rule of strict construction of writings of this nature when made as announced in Lind v. Burke, *supra.* The rule of strict construction was not changed or modified.

Lind v. Burke, *supra,* was followed in Moore v. Flack, *supra,* filed June 20, 1906. The facts, in substance, were as follows: Robert Moore, a former resident of Kentucky, died in Kearney County, Nebraska, August 18, 1889, seized of a quarter section of land situated in that county. J. W. Gilman was the administrator of his estate which was closed in January 1891. During the progress of the administration the right of heirship to the estate was contested between John F. Moore, who claimed to be a half brother of the deceased, and Daisy D. Moore, who claimed to be the daughter and sole heir of the deceased, the latter represented by a guardian ad litem who was her attorney in the action. The county court found in favor of the half brother and against the minor Daisy D. Moore. Thereafter the lands in controversy passed by mesne conveyance from John F. Moore to the defendant Henry J. Flack who purchased them on July 12, 1892, and cultivated and occupied the lands as his own. In January 1903, Daisy D. Moore filed a petition in the district court alleging ownership of the lands in dispute as a daughter and sole heir of Robert Moore, deceased, and asked that the former decree of the county court that declared John F. Moore the sole heir at law of

Robert Moore, deceased, be set aside because it was procured by fraud and perjury, and also that the conveyances from John F. Moore to Flack be canceled and held for naught and the title to the lands in controversy be quieted in her. Thomas Moore, an alleged child of Robert Moore, deceased, intervened in the suit, and filed a petition in which he alleged he was the illegitimate child of the deceased; that he had been recognized in writing as such by the deceased in the presence of a competent witness; and that because of such recognition he was entitled to the inheritance as the sole heir of Robert Moore, deceased. He further alleged that he was an infant in Kentucky at the time of the proceeding in the probate court of Kearney County, and had no notice of any kind of proceeding in the county court. He further alleged that John F. Moore, to whom the inheritance had been awarded in the county court, was a bastard and not a legitimate half brother of Robert Moore, deceased. Flack, the defendant, answered these petitions, alleging his ownership of the lands by mesne conveyances from John F. Moore, and pleaded the proceeding in the county court as a bar to the claims of both plaintiff and intervener. There was judgment for the defendant, petitions of the plaintiff and intervener were dismissed, and separate appeals brought to this court by the plaintiff and the intervener. The intervener's evidence was to the effect that the deceased had been adjudged the father of the intervener in a bastardy proceeding instituted against him in the county court of Rowan County, Kentucky. It was the recollection of the presiding judge that the deceased had admitted in court that he was the father of the child. There was no evidence that such admission was made, if at all, in writing. A deposition was introduced by the intervener of a witness who testified that he resided for many years in Rowan County, Kentucky, and had known Robert Moore since 1870; that he last saw him at Farmers, Rowan County, Kentucky, shortly before he went to Nebraska, and had a

conversation with Robert Moore about Omie Oney's bastard child in Farmers, Rowan County, Kentucky, and Robert Moore said he wanted to get the child away from her, as it was his child; that he had had the child adopted by her consent, and wanted the witness to assist him in getting the child away; and that he wrote Omie Oney a note which this witness gave to her. The note said: "I am going to leave. I have to leave you. I bid old Kentucky good bye for a while. I don't just know when I will be back. Take good care of our boy, and call him Thomas Moore, and I will give him a good start some day." This witness read the note to Omie Oney. The witness further stated that he saw Robert Moore with Thomas Moore (intervener) after Omie Oney moved onto witness' place. Robert Moore would come over and stay 2 days at a time with the child, staying at the witness' house at night. On cross-examination the witness said this letter was written and signed in his presence. Omie Oney testified that she could neither read nor write, but that she remembered the contents of the note, just as stated by the witness. She put the note away in a paper box with other papers and it was lost. She was unable to find it. The court said: "It is clear that the evidence with reference to the bastardy proceeding is wholly insufficient to show an acknowledgment within the provisions of section 31, *supra*. So the only question is as to the sufficiency of the testimony of Gearhart (the witness who gave the deposition) and Omie Oney to establish an acknowledgment, in writing, by the deceased of the paternity of the intervener." The question was, was the writing a sufficient recognition to create an heirship within the meaning of the statute? The material portion of this note as testified to was: "Take good care of our boy, and call him Thomas Moore, and I will give him a good start some day." The court said: "In Lind v. Burke, 56 Neb. 785, the sufficiency of an acknowledgment of paternity under this section of the statute was examined into, and, while the question

as to whether the instrument must have been acknowledged with the intent to create a right of heirship was not determined, yet it was there said: 'We are satisfied that a writing, to fulfil the requirement of the law * * * must be at least one in which the paternity is directly, unequivocally, and unquestionably acknowledged.' It is further said in the opinion: 'It must not be forgotten in this examination that it is not because the person can be shown to be the offspring, or is in fact the illegitimate child, that it may assert heirship, but because it has been in writing acknowledged; and hence *the writing must be in and of itself sufficient, unaided by extrinsic evidence, to establish the paternity.*' " (Emphasis supplied.) The writing was then held to be insufficient under the statute. The court said: "The reference to intervener as 'our boy' in the note is not a clear and unequivocal acknowledgment of the paternity of the boy. Nor is the request that the child be named Thomas Moore equivalent to an acknowledgment that Robert Moore was the natural father of the child. Nor is the promise that 'I will give him a good start some day' inconsistent with any other theory than that the writer of the note was the father of the child. In the later case of Thomas v. Estate of Thomas, 64 Neb. 581, it was decided that it was immaterial whether or not the writing was made with the intent to constitute an heirship, *but the rule of strict construction of writings of this nature, when made, as announced in Lind v. Burke, supra, was not modified.*" (Emphasis supplied.)

In Van Hove v. Van Hove, 94 Neb. 575, 143 N. W. 815, the plaintiff was the illegitimate son of Maria Leonia Audenaert, a citizen of Belgium, who intermarried with August Van Hove in Belgium in 1887. The plaintiff was 7 years of age at that time. The contention was that the plaintiff was an heir of August Van Hove under section 4931, Ann. St. 1911, now section 30-109, R. R. S. 1943. The record of the marriage in Belgium recited that: "The above named husband and wife agreed tak-

ing as their lawful children and to recognize them as such: Engene Audenaert, born at Sinay, the 9th of March, 1880." The record appears to have been signed by August Van Hove, and it is contended that this satisfied the statute. The court said: "Under the laws of Belgium, which are shown in the record, it does not appear easier to establish heirship in such cases than under our statutes." The record was held to be clearly insufficient to meet the requirements of the statute, citing Lind v. Burke, *supra*, and Moore v. Flack, *supra*. In other words, the rule announced in such cases was adhered to.

The interpretation placed by this court on what is now section 30-109, R.. R. S. 1943, has stood for a period of nearly 60 years without modification. No case has overruled such interpretation or endeavored to distinguish Lind v. Burke, insofar as the rule announced with reference to said statute is concerned. The Legislature has not seen fit to interfere with the statute as originally enacted, except in the minor detail above mentioned. The majority opinion now overrules Lind v. Burke, *supra*, and Moore v. Flack, *supra*, as stated therein, and now places an entirely different and very liberal interpretation and, in fact, adds to the statute certain elements not contemplated by the Legislature.

I make the further observation that in determining heirship or the right to inherit, strict interpretation of the statutes governing the same should be adhered to. The interpretation now placed on section 30-109, R. R. S. 1943, leads to no other result than to invite and permit questionable litigation. I conclude the majority opinion is wrong in its interpretation of section 30-109, R. R. S. 1943.