JOHN PEETZ, JR., ADMINISTRATOR OF THE ESTATE OF MARVIN L. HAGLER, DECEASED, APPELLEE, V. MASEK AUTO SUPPLY COMPANY, INC., A CORPORATION, APPELLANT, IMPLEADED WITH BEKINS VAN LINES COMPANY, A CORPORATION, APPELLEE.

70 N. W. 2d 482

Filed May 20, 1955. No. 33632.

*Neighbors & Danielson, Chambers, Holland & Groth,* and *Orie C. Adcock,* for appellant.

*Maupin & Dent, Martin, Davis & Mattoon,* and *Richard W. Satterfield,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought in the district court for Cheyenne County by John Peetz, Jr., administrator of the estate of Marvin L. Hagler, deceased, against the Masek Auto Supply Company, Inc., a corporation, and Bekins Van Lines Company, a corporation, defendants, for damages resulting by virtue of a collision between a tractor-truck owned and operated by Marvin L. Hagler, hereinafter referred to as Hagler, and an automobile owned and operated by Kenneth J. Conner, hereinafter referred to as Conner. Both of the operators of the vehicles were killed in the accident.

The cause was submitted to a jury, and the jury, pursuant to instructions, returned special findings. The jury found for the plaintiff and assessed the recovery as follows: On the first cause of action, that Marvin L. Hagler would have contributed an average amount of $1,136 annually to Michael Dennis Hagler for 19 years,

and an average amount of $1,165 annually to David Lee Hagler for 17 years; on the second cause of action, pursuant to stipulation and instructions of the court, that the value of the funeral expenses was $928.30; and on the third cause of action, pursuant to stipulation and instructions of the court, that the value of Marvin L. Hagler's truck was $925.

The defendant filed a motion for judgment notwithstanding the verdict and in the alternative a motion for new trial. These motions were overruled and judgment was rendered for the plaintiff on all his causes of action in the sum of $30,946.45. The defendant Masek Auto Supply Company, Inc., a corporation, appeals.

The appellant assigns as error that (1) the trial court erred in holding that Marvin Lee Hagler, by way of exhibit No. 15, legitimated Michael Dennis Hagler and David Lee Hagler, in not holding that they had not been legitimated, and in admitting such exhibit into evidence; and (2) the trial court erred in not holding as a matter of law that Conner was an independent contractor and not an employee of the defendant Masek Auto Supply Company, Inc., a corporation.

We will take up the assignments of error necessary for a determination of this appeal in continuity.

It appears from the record that Hagler and Conner were killed in a collision at about 5 p. m., on June 11, 1953, on U. S. Highway No. 30 about 15 miles west of Sidney, Nebraska, in an area locally known as Point of Rocks. Hagler had been operating a Bekins Van Lines semi-trailer traveling eastward. He had attached a trailer loaded with furniture to his tractor about 1 p. m., in Cheyenne, Wyoming, and left for the east. Conner had transacted some business in Sidney, Nebraska, for the defendant, Masek Auto Supply Company, Inc., and was in Sidney between 4 and 4:30 p. m. of that day. Eyewitnesses to the collision, traveling westward on Highway No. 30, testified that they observed Conner's car approaching them from the rear, weaving from side

to side on the highway. They pulled completely off the pavement to the right side of the highway and stopped, believing that Conner's car would crash into them. However, Conner's car missed their car and succeeded in weaving around another westbound car between their car and a truck approaching from the west. Conner's car then swerved to the left side of the highway and collided head-on with Hagler's truck. Hagler's truck left tire marks on the pavement in his right hand lane of traffic beginning 98 feet west of the point of the collision. These tire marks were light from the point of origin for the first 65 feet and then became heavy for the last 33 feet before the collision. It appeared to one of the eyewitnesses that Hagler, at the last instant, swerved his truck sharply to the left to miss Conner's approaching car. Hagler's truck appeared to pass over the top of Conner's car, overturning and catching fire in the process. Hagler was in the flames and could not be removed. Conner's body was lying possibly 10 feet beyond his car, and he was dead. A blood sample taken from Conner's body after death, on analysis by a state chemist, showed an alcoholic content of .07 percent by weight. Such a concentration, in the opinion of a doctor, would appreciably affect anyone's judgment and possibly co-ordination.

A state safety patrolman testified that the truck tire marks veered sharply to the left; that the impact of Conner's car appeared to have been on the left front and across the car to the right rear; that after a careful search he was unable to find any tire marks on the pavement east of the point of impact which could have been made by Conner's car; and that the speedometer on Conner's car was stuck at 65 miles an hour after the collision.

While the appellant makes no assignment of error upon the phase of the case with reference to the sufficiency of the evidence to submit the cause to the jury, the foregoing statement of facts clearly indicates there

was sufficient evidence from which a jury would be able to find that the direct and proximate cause of the collision and the injuries sustained by Hagler resulting in his death and the damage to his tractor truck was the negligence of Conner.

It might be mentioned also that the trial court instructed the jury that there were no questions in the case relating to the rights of the Bekins Van and Storage Company for its consideration.

The record discloses that Ruby Hagler, the name she took after she became acquainted with and went to live with Hagler, was born in Tennessee in 1921, and was divorced in 1947, in Missouri. She met Hagler at Bethany, Missouri, in 1947. She was unaware of the fact that he was a married man and had a child, and did not learn of this fact until the spring of 1948. Hagler was not sure whether his wife had obtained a divorce or not. It is apparent from the record that Ruby Hagler was unable to ascertain this fact, was unable to contact the wife after the death of Hagler, and therefore had no direct information on this subject. Ruby and Hagler started to live together in Burlington, Iowa, on November 1, 1947. They were both working at that time. Ruby worked as a practical nurse for 2 or 3 months and had no outside employment after that time. Hagler worked in a jewelry and appliance store for a while. They resided in Burlington, Iowa, for about 2 years. On February 24, 1950, a child named David Lee Hagler was born at St. Anthony's Hospital in Hays, Kansas. On September 16, 1951, a child named Michael Dennis Hagler was born at Rosary Hospital in Corning, Iowa. On September 2, 1952, a third child, Verna Jean Hagler, was born at Greater Community Hospital in Creston, Iowa. Ruby Hagler testified that Marvin Lee Hagler was the father of the above-mentioned children. When the first child was born, Hagler was working as a Fuller brush salesman. Thereafter he, Ruby, and the baby moved to McFall, Missouri, where they lived with

Hagler's parents for a short time. Hagler helped his father with the farming. They then moved to Tingley, Iowa, where Hagler was employed as a farm hand. After the second child was born they borrowed $4,358.10 from a landowner by the name of Houck and purchased some farm machinery and livestock. Hagler entered into a farming venture with Houck in March 1952. In November 1952, Hagler sold out and settled with Houck. He had accumulated about $900, after paying off the note. Hagler then bought the tractor involved in the accident, and started to work for the Bekins Van and Storage Company. At that time Ruby and the children moved in with Hagler's sister for about a month, then moved to Corning, Iowa, where they were living at the time of his death. Hagler filled out an application for such position on December 27, 1952.

The witness R. Lowell Johnson testified that he resided in Omaha and was secretary of the Bekins Van and Storage Company, which position he had held for about 10 years. One of his duties was to take applications from prospective employees. In that capacity he became acquainted with Hagler. He identified exhibit No. 15, which is in the record, as being the job application executed by Hagler. He saw Hagler sign exhibit No. 15. Objection was made because this exhibit did not satisfy the requirements of section 30-109, R. R. S. 1943. The pertinent part of the exhibit reads as follows: "6. Names, ages, relationship and address of any persons dependent on you for support or to whose support you are contributing Ruby Hagler - Wife age 26. 2 Sons. David Lee & Michel Dennis Hagler. age 2 - 1 yr. * * * (Sign here) Lee Hagler."

The record discloses that Ruby Hagler and Verna Jean Hagler are not here involved in any manner.

This brings us to the appellant's first assignment of error noted above.

Section 30-109, R. R. S. 1943, insofar as necessary to be considered here, provides in part: "Every child born

out of wedlock shall be considered as an heir of the person who shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, * * *."

It is true, as asserted by the appellee, that said section provides for the prescribed evidence of paternity, and that no intention to make the child an heir, and no distinct statement that it is an illegitimate child, need appear in the writing. See Thomas v. Estate of Thomas, 64 Neb. 581, 90 N. W. 630.

In In re Estate of Winslow, 115 Neb. 553, 213 N. W. 819, it is said: "Such an acknowledgment need not be in a formal paper, executed for the specific purpose, but may be contained in a letter, provided the father unequivocally acknowledges therein his paternity of the illegitimate child, and signs the written acknowledgment in the presence of a competent witness."

The appellee contends the foregoing cases àre determinative of the question by virtue of the language used therein, therefore the application of employment signed by Hagler, heretofore set out in part, met the requirements of section 30-109, R. R. S. 1943. We are not in accord with the appellee's contention in such respect.

This court held in In re Estate of Oakley, 149 Neb. 556, 31 N. W. 2d 557, with reference to section 30-109, R. R. S. 1943, that a person claiming to be an heir under such statute has the burden of proving (1) that he is illegitimate, (2) that his alleged father was actually his illegitimate father, and (3) that the alleged father recognized the child in accordance with the statute.

The appellant asserts that the appellee discharged his burden with reference to the first two requirements above set out. However, with reference to the third requirement, the appellee failed to discharge the burden.

In Lind v. Burke, 56 Neb. 785, 77 N. W. 444, it was held that a writing, to fulfill the requirement of the law, must be at least one in which the paternity is directly, unequivocally, and unquestionably acknowledged.

It was also said: "It must not be forgotten in this examination that it is not because the person can be shown to be the offspring, or is in fact the illegitimate child, that it may assert heirship, but because it has been in writing acknowledged; and hence the writing must be in and of itself sufficient, unaided by extrinsic evidence, to establish the paternity." See, also, Moore v. Flack, 77 Neb. 52, 108 N. W. 143, which followed Lind v. Burke, *supra*.

In the instant case all that Hagler signed was an application for employment setting forth whom he deemed to be his dependents. This instrument is insufficient, under section 30-109, R. R. S. 1943, to prove that the alleged father legitimated the two children, the subject of this action. Such instrument was not an express, unequivocal, and unquestionable acknowledgment of the paternity of the illegitimate children that would make proper compliance with the statute. We believe that the appellant is entitled to prevail on its first assignment of error, and that the first cause of action, found by the jury to be in favor of the appellee, must necessarily fail. The trial court was in error, as contended for by the appellant.

This brings us to the appellant's second assignment of error as above noted. On this phase of the case there are two questions to be determined: First, was the salesman (Conner) an employee or an independent contractor; and second, if the salesman was an employee, was he acting within the scope of his employment at the time of the accident?

Where the inference is clear that there is, or is not, a master and servant relationship, the determination is made by the court; otherwise the jury determines the question after instruction by the court as to the matters of fact to be considered. Restatement, Agency, § 220, p. 483. See, also, Thurn v. La Crosse Liquor Co., 258 Wis. 448, 46 N. W. 2d 212.

Each case must be determined with a view to the sur-

rounding facts and circumstances, the character of the employment, and the nature of the wrongful act. Whether the act was or was not such as to be within the scope of his employment is, ordinarily, one of fact for the determination of the jury. See, Dafoe v. Grantski, 143 Neb. 344, 9 N. W. 2d 488; LaFleur v. Poesch, 126 Neb. 263, 252 N. W. 902; 35 Am. Jur., Master and Servant, § 553, p. 986.

With the foregoing authorities in mind, we proceed to the evidence on this phase of the case.

The appellant sets forth the following elements by which it contends that Conner was an independent contractor and not an employee of the appellant, and which find some support in the record: Conner was permitted to select his own territory and to drop towns therefrom where he had been selling, and occasionally did so; other salesmen sold in his territory and he sold in theirs; Conner was permitted to sell for other companies; although he was given a drawing account, his commissions and bad credits were charged against it; he paid his own expenses; he was not required to call on customers; he operated his own automobile and was given no allowance for its use; and he was not required to make reports as to his operations or whereabouts.

There is no evidence of a written agreement between the salesman Conner and the appellant corporation.

There is also evidence, exclusive of the testimony of Mr. Masek, to the effect that for nearly 3 years Conner had been designated on the corporate records as an employee; the appellant corporation made social security payments in his behalf and had contributed to premiums of an employees' group insurance policy; it had carried workmen's compensation coverage for Conner; it had consistently paid a fixed sum monthly to Connor which included his on-the-road traveling expenses; and it had consistently withheld from the net amount of monthly payments to Conner withholding taxes for application on Conner's income tax.

We held in Riggins v. Lincoln Tent & Awning Co., 143 Neb. 893, 11 N. W. 2d 810, that the fact that social security tax was deducted from the plaintiff's earnings was evidence of the fact that the relationship of employer and employee existed. Carter v. Hodges, 175 Tenn. 96, 132 S. W. 2d 211, was cited.

In the instant case it is noted that the appellant paid social security payments in behalf of Conner, paid part of the premium on an employees' group insurance policy, carried workmen's compensation coverage for Conner, and withheld certain amounts for income tax purposes from the amount earned by Conner. All of these facts constitute evidence of the fact that Conner was an employee of the appellant.

The evidence of Conner's conduct over a 3-year period in behalf of the appellant, such as the continuity of his service; the regularity of his calls upon customers; the pattern established by his expense records and the payment thereof as sales expense by the appellant; the regularity of Conner's attendance at the company meetings on Saturday mornings; and the indication of Conner's desire to conceal knowledge from the appellant of his selling some items of clothing after his working hours indicate the appellant's control over the salesman Conner.

The evidence also shows the method of payment for Conner's services by the appellant to be established as the amount of $375 a month, which may be considered a guarantee, from which Conner was to pay his own expenses while on the road. In addition thereto he was to, and did, receive additional pay when the volume of his sales was sufficient to exceed the $375 a month. The service or work Conner was performing was a part of the regular business of the employer, and each and every record of the appellant's accounting system submitted in evidence in the case at bar was indicative of the inference, if not the establishment of the fact, that the parties believed they were creating the relationship of master and servant during the entire period of

Conner's activity for the appellant.

Conner had called on his customers in Sidney shortly before the collision occurred, and had loaded in his car tires from a customer to be returned to the appellant for adjustment. He had told the customer of his intention to proceed to Potter to call on another customer who was awaiting his call. Between the towns of Sidney and Potter, where Conner had intended to call and then proceed on to Gering for the night and return to work at Kimball the following day, he collided with the truck driven by the appellee's decedent.

We conclude that the above matter was a jury question and, under proper instructions given by the trial court, was resolved against the appellant. The appellee's second and third causes of action are sustained.

In the light of what has been said in this opinion it becomes unnecessary to consider appellant's other assignments of error. We find nothing in the record to indicate that the verdict was the product of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law and that the verdict should be set aside.

For the reasons given herein, the judgment of the trial court is reversed as to the appellee's first cause of action and affirmed as to the second and third causes of action.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.