Sharon **MONTGOMERY**

v.

Richard S. **SCHWEIKER**, Secretary, Department of Health and Human Services.

Civ. No. K–78–1463.

United States District Court, D. Maryland.

Sept. 30, 1981.

---

Peter M. D. Martin and Dennis W. Carroll, Jr., Baltimore, Md., for plaintiff.

J. Frederick Motz, U. S. Atty., D. Md. and Gale E. Rasin, Asst. U. S. Attorney, Baltimore, Md., Stephanie W. Naidoff and Susan D. Bricklin, Region III, Dept. of Health and Human Services, Philadelphia, Pa., John W. Wojciechowski, Dept. of Health and Human Services, Baltimore, Md., for defendant.

**FRANK A. KAUFMAN, Chief Judge.**

Plaintiff-appellant, Sharon Montgomery (plaintiff) appeals from the Secretary's (defendant's)[1] denial of her claim for Child's Insurance Benefits, following the death of her alleged father, Walter Williams. In denying plaintiff's claim, the Administrative Law Judge (ALJ) stated the following findings and conclusions:

(1) The wage earner, Walter Williams, died on September 15, 1974, in South Carolina where he was buried.

(2) Sharon M. Montgomery is unmarried and was not age 18 at the time the application for child's insurance benefits was filed [on September 30, 1974].

(3) Sharon M. Montgomery, the daughter of Edna Lee (Hill) Featherstone, was not living with Walter Williams at the time of his death on September 15, 1974, nor was he contributing to her support at that time.

(4) Walter Williams and Edna Lee (Hill) Featherstone were not married.

(5) Walter Williams was domiciled in South Carolina and under South Carolina intestacy laws an illegitimate child cannot inherit from his estate. Sharon M. Montgomery is not entitled to benefits.

(6) Walter Williams never acknowledged in writing that he was the father of Sharon M. Montgomery.

(7) There was no court child support order nor paternity petition naming Walter Williams as the father or the supporter of Sharon M. Montgomery.

(8) Sharon M. Montgomery is not the child of Walter Williams, within the

---

1. The current Secretary has been automatically substituted as the party defendant as per Federal Civil Rule 25(d).

meaning of the Social Security Act, as amended.[2]

In *Allen v. Califano*, 452 F.Supp. 205, 208–09 (D.Md.1978) (*Allen I*),[3] Judge Blair explained the statutory scheme involved in the within case:

\* \* \* \* \* \*

Generally speaking, those children who meet the age, filing and non-marriage requirements of the Act, 42 U.S.C. § 402(d)(1), and who have not been legally adopted by another, 42 U.S.C. § 402(d)(3)(B), are eligible for benefits if they were *dependent* upon the wage earner at the time of his death. 42 U.S.C. § 402(d)(1)(C)(ii). A child is *deemed dependent* if he was (1) living with or supported by the wage earner at the time of his death, or (2) is the *legitimate child* of the wage earner. 42 U.S.C. § 402(d)(3). If a child is *illegitimate*, he may nonetheless be *deemed legitimate* for purposes of the Act (and hence deemed dependent and thus entitled to benefits) if he can make one of four showings:

1) That the infant would be entitled to inherit personal property from the deceased wage earner under the law that would be applied in determining the devolution of intestate personal property by the courts of the wage earner's state of domicile at death,[4]

2) That the deceased wage earner and the other parent of the infant went through a marriage ceremony rendered invalid by some legal insufficiency,

3) That the deceased wage earner had a) acknowledged the infant claimant in writing as his or her son or daughter or b) been decreed by a court to be the claimant's parent, or c) been ordered by a court to support the claimant on the basis of parenthood,[6]

4) That the deceased wage earner was actually living with or contributing to the support of the infant claimant at the time of the wage earner's death.

---

[4] In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such. 42 U.S.C. § 416(h)(2)(A).

\* \* \* \* \* \*

[6] An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection ... shall nevertheless be deemed to be the child of such insured individual if:

(c) In the case of a deceased individual—

(i) such insured individual—

(I) had acknowledged in writing that the applicant is his son or daughter,

(II) had been decreed by a court to be the father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter, and such acknowledgement, court decree, or court order was made before the death of such insured individual. 42 U.S.C. § 416(h)(3)(C)(i).

(certain footnotes omitted).

In the within case Plaintiff contends that she is entitled to prevail in this appeal under "showing" 1 and/or "showing" 3 as so set forth by Judge Blair in *Allen I*. Defendant's position is that on the record the Secretary's decision should be approved.

---

**2.** Administrative Transcript in this case (Tr. 26). The ALJ also stated (Tr. 25) in his decision that "it seems likely that Sharon M. Montgomery was Walter Williams' illegitimate daughter." During a hearing in this Court on October 11, 1979, counsel for defendant conceded that Walter Williams was plaintiff's father. Counsel for defendant did *not* concede that plaintiff is "the daughter of Walter Wil-

liams, within the meaning of the Social Security Act as amended."

**3.** In *Allen II* (*Allen v. Califano*, 456 F.Supp. 168 (D.Md.1978)), Judge Blair considered certain additional questions after he had heard the views of the Attorneys General of Maryland and Pennsylvania, 456 F.Supp. *supra* at 170.

The issues herein require analysis of the administrative record and the law applicable to it. These issues are framed by Judge Blair's language in *Allen I* as to "showing" 1 and "showing" 3.

I. *Acknowledgement* —i. e. "Showing" 3

The record in this case does not contain any writing executed by Walter Williams which unequivocally acknowledges paternity of plaintiff. Seemingly, if any such writing ever existed, it is unknown to the parties herein. The record does contain a form Williams completed for the Quality Control Division of the Department of Employment and Social Services in Baltimore, Maryland. In June of 1974 that department sent Williams the form in question in connection with verification of the statement of Featherstone that Williams was not contributing to the support of their daughter. Williams responded on that form that he had not sent any money directly to Featherstone; Williams did not, in his response, refer to plaintiff. Williams' denial in his response that he had sent money to Featherstone could be viewed as a denial of paternity.[4] The record does contain *oral* acknowledgements of paternity by Williams. But the record contains no oral statements by Williams concerning the Social Services form or Williams' response to it. Thus, the issue is presented as to whether an ambiguous writing, i. e. Williams' said written response, taken together with oral affirmations of paternity unrelated to that writing, constitute a written acknowledgement of paternity within the meaning of the Social Security Act. The statutory language itself indicates the contours of that issue. The legislative history if of little or no aid; the court decisions and administrative rulings provide guidance but no clear answer.

In *Cook v. Weinberger*, Unempl.Ins.Rep. (CCH) ¶ 14,325 (N.D. Ohio 6/30/75), the alleged father had, prior to the claimant's birth, signed a cognovit note in which he had agreed to pay medical expenses incurred by the mother as a result of her pregnancy. In signing the note, the purported father identified his relationship to the mother as that of a "friend." The ALJ concluded that the alleged father had acknowledged his paternity of the child. The Appeals Council reversed; on appeal, the District Court affirmed that reversal. In Social Security Ruling 68–54, the purported father had executed a written out-of-court agreement providing for monthly payments, over an eleven-year period, to the claimant's mother. The agreement further provided that upon the final payment, the father was to be released from any further liability "by reason of his association with" the claimant's mother. The author of that Administrative Ruling concluded that the requirements for a written acknowledgement had not been met:

> The out-of-court settlement or agreement does not *on its face* constitute a written acknowledgement of paternity but rather implies that there was some kind of "association" between [the alleged father] and [the mother] and that, to avoid litigation, [the alleged father] agreed to out-of-court settlement of [the mother's] claim.

(emphasis supplied). The words "on its face" suggest that the writing must be an unambiguous statement of paternity.[5]

In *Wood v. Califano*, Unempl.Ins.Rep. (CCH) ¶ 15,685 (E.D.Mo. 12/12/77), the Court determined that extrinsic evidence *relating to the writing itself* could not be used to prove that a writing constituted an acknowledgement of paternity. The St. Louis County Welfare Office had sent to the deceased a letter stating that the alleged father had "already admitted paternity of Kenneth. We should like to know if you also admit paternity of Sally." In his response, the alleged father denied knowledge of Sally, but stated "I will do what I

---

4. The ALJ referred to the form as one of "a number of facts in the file which are contrary to the conclusion that Sharon Montgomery was Walter Williams' daughter." Tr. 24.

5. Two other Social Security Rulings could, however, be read as sanctioning the use of related evidence to interpret a writing. See SSR 77–23, Unempl.Ins.Rep. (CCH) ¶ 15,296; SSR 72–32.

can for Kenneth . . . ." The ALJ concluded that that constituted a written acknowledgement of paternity of Kenneth. The district court reversed, finding a lack of unequivocal acknowledgement of paternity.

Numerous state cases, which also seem to require such a clear and unequivocal recognition of paternity, have refused to sanction the use of extrinsic evidence to interpret a writing which suggests acknowledgement of paternity. *See Annot.* "What amounts to recognition within statutes affecting the status or rights of illegitimates," 33 A.L. R.2d 705, and cases cited at 725–32.[6]

 The reluctance of the courts and of those charged with administration of the statute, to allow the use of extrinsic evidence is understandable, since use of extrinsic evidence unrelated to the writing would come close to abandoning the writing requirement—i. e. all a claimant would need is some writing, no matter how ambiguous, plus one or more oral affirmations of paternity. Accordingly, in this case, in which the writing is ambiguous, and does not specifically refer to the claimant, this Court cannot conclude that plaintiff has established a sufficient basis to meet the test of "showing" 3, as the latter is denominated in *Allen I.* Thus, herein, it is necessary for this

Court to answer the question of whether "showing" 1, as denominated in *Allen I,* is met, i. e. whether plaintiff is entitled to inherit Williams' property under South Carolina law. In that connection, analysis is required of the whole law of that state, including its choice of law approach. *See Allen I* at 211; *Perez v. Gardner,* 277 F.Supp. 985, 989 (E.D.Wis.1967); *Rivera v. Celebrezze,* 248 F.Supp. 807, 812 (D.P.R. 1966). *See also Arcand v. Flemming,* 185 F.Supp. 22 (D.Conn.1960). *Cf. Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962) (whole law employed under Federal Tort Claims Act).[7]

## II. *Inheritance*—i. e. "Showing" 1

The plaintiff in this case, Sharon Montgomery, was born in Maryland, and was seemingly domiciled there.[8] Accordingly, either South Carolina or Maryland intestacy law is applicable.[9] The South Carolina intestate succession statute permits an illegitimate child to inherit by or from her mother, but not from her father. *See S.C. Code* §§ 21–3–20, 21–3–30. The applicable Maryland statute permits, *inter alia,* intestate inheritance from the father if the father "openly and notoriously recognized the child to be his child."[10] Thus, since the two

---

6. *See also, e. g., Green v. Blue,* 28 App.Div.2d 628, 280 N.Y.S.2d 767 (3d Dept. 1967); *Anonymous v. Anonymous,* 25 App.Div.2d 350, 269 N.Y.S.2d 653 (2d Dept. 1966), *aff'd* 280 N.Y. S.2d 405, 19 N.Y.2d 840, 227 N.E.2d 318, *remittitur amended* 283 N.Y.S.2d 105, 20 N.Y.2d 742, 229 N.E.2d 701; *Peetz v. Masek Auto Supply Co.,* 161 Neb. 588, 74 N.W.2d 474 (1956), *withdrawing* 160 Neb. 410, 70 N.W.2d 482 (1955); *Blythe v. Ayres,* 96 Cal. 532, 31 P. 915, 927 (1897).

7. In *Jimenez v. Weinberger,* 417 U.S. 628, 631 n.2, 94 S.Ct. 2496, 2499 n.2, 41 L.Ed.2d 363 (1974), Chief Justice Burger, in describing the statutory scheme, stated that children are entitled to the benefits in question if they are entitled to inherit their parents' property "under the *intestacy* laws of the state of the insured's domicile (emphasis supplied)." However, there is no indication that the Chief Justice was excluding the domiciliary state's conflicts laws. In *Mathews v. Lucas,* 427 U.S. 495, 499, 96 S.Ct. 2755, 2759, 49 L.Ed.2d 651 (1976), Justice Blackmun wrote of the child being entitled to benefits "under the *applicable* state intestacy law (emphasis supplied)." Again there is no

reason to believe that Justice Blackmun intended to exclude, rather than to include, the choice of law rules of the applicable state law.

8. Tr. at 23.

9. In this case, the ALJ applied South Carolina intestacy law.

10. Annot. Code of Md., Estates & Trusts § 1–208(b) provides:
 (b) *Child of his father.*—A child born to parents who have not participated in a marriage ceremony with each other shall be considered to be the child of his father only if the father
 (1) Has been judicially determined to be the father in an action brought under the statutes relating to paternity proceedings; or
 (2) Has acknowledged himself, in writing, to be the father; or
 (3) Has openly and notoriously recognized the child to be his child; or
 (4) Has subsequently married the mother and has acknowledged himself, orally or in writing, to be the father.

statutes are in conflict, it is necessary to determine which statute is applicable under South Carolina's choice of law approach.

South Carolina seemingly has not spoken on that issue. It may be that a majority of those jurisdictions which have resolved such an issue have applied the intestacy law of the state of the deceased father's domicile. *See* cases cited in *Annot.* "Conflicts of laws as to legitimacy or legitimation or as to rights of illegitimates, as affecting descent and distribution of decedent's estate," 87 A.L.R.2d 1274, 1296–98.[11] However, the Restatement (Second) of Conflict of Laws takes a different approach. Section 287 thereof states:

§ 287. Law Governing Legitimacy

(1) Whether a child is legitimate is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the child and the parent under the principles stated in § 6.

(2) The child will usually be held legitimate if this would be his status under the local law of the state where either (a) the parent was domiciled when the child's status of legitimacy is claimed to have been created or (b) the child was domiciled when the parent acknowledged the child as his own.

Comment d explains:

The factors listed in Subsection (2) of the rule of § 6 vary somewhat in importance from field to field and from issue to issue. In the area of legitimacy, the factors that to date have come most to the fore in the decisions are implementation of the relevant policies of the state with the dominant interest in the determination of the particular issue, protection of the justified expectations of the parties and implementation of the basic policies underlying the. particular field of law
. . . .

\* \* \* \* \* \*

If anyone of those four prongs is satisfied, a child is entitled to inherit. *See Massey v. Weinberger*, 397 F.Supp. 817, 821 (D.Md.1975) (Miller, J.). See also *Allen I, supra* at 212.

The factor favoring protection of the justified expectations of the parties comes into play in situations where the parent does an act with the intention of thereby legitimating the child. So if the parent acknowledges the child as his own, the parent's act of acknowledgement should be given its intended effect provided, at least, that this would be the result under the local law of the state where either the parent or the child was domiciled at the time.

Comment g states:

g. *Legitimacy under local law of child's domicil.* Whether the local law of the child's domicil will be applied to hold him legitimate with respect to a parent is a question that can only arise in a situation where the parent and child are domiciled in different states. Since the status of legitimacy is to be preferred over that of illegitimacy, compliance with the requirements of the state of the child's domicil should be enough to legitimate the child unless considerations of fairness to the parent forbid. Such considerations do not exist in a situation where the parent acknowledges the child as his own, and, under the local law of the state of the child's domicil, this acknowledgement legitimates the child with respect to the parent. By his acknowledgement, the parent has recognized the child to be his and has intentionally conferred upon him a certain status. Under the circumstances, legitimation of the child as a result of this act of acknowledgement by application of the local law of the state of the child's domicil could hardly be unfair to the parent and indeed might well be in accord with his expectations. The clearest case for legitimation under the local law of the state of the child's domicil is where the parent acknowledges the child, either inside or outside the state of the child's domicil, for the express purpose of legitimating him.

11. *See generally* the authorities cited in the Reporter's Note to the Restatement (Second) of Conflict of Laws, § 287.

*See also* Leflar, *American Conflicts Law*, § 241 at 488 (3d Ed. 1978) in which after noting the conflict between the interests of parent and child, the author wrote: "Relevant social policy favors legitimation, and accordingly favors application of the law of any state, including the child's domicile, that achieves legitimation, provided it has a reasonable connection with the facts."

■ Though, as far as this Court is informed, no South Carolina court has as yet spoken to the choice of law issue presented herein, the Supreme Court of that state has demonstrated a willingness in certain situations to apply the law of other jurisdictions as to matters of family status even when such law has been inconsistent with South Carolina law. In *Zwerling v. Zwerling*, 270 S.C. 685, 244 S.E.2d 311 (1978), the wife sued the husband for divorce in South Carolina. The parties had been married in New York after the wife, a New York resident, had, with the knowledge of her husband-to-be, obtained a bilateral Mexican divorce from her former husband. Contending (244 S.E.2d at 312) that the Mexican divorce and subsequent marriage were binding under New York law and that there was "no South Carolina public policy to prohibit a recognition" of that marriage, the Supreme Court of South Carolina held that the trial court's refusal to afford validity to the marriage was error. *See also Cribbs v. Floyd*, 188 S.C. 443, 199 S.E. 677, 681–82 (1938), in which an adoption pursuant to and valid under North Carolina law was recognized by the Supreme Court of South Carolina in order to permit the adopted child to inherit land in South Carolina from his adoptive father who had died intestate. In view of

the principles set forth in the Restatement and the indications obtainable from the opinions of the Supreme Court of South Carolina discussed *supra*, this Court concludes that South Carolina would apply Maryland law herein and permit the plaintiff, Sharon Montgomery, to inherit Williams' personal property if Maryland law would so permit. Thus, returning to Maryland law, it is necessary to determine if Williams openly and notoriously recognized plaintiff as his daughter.

■ During the original proceedings in this case before the ALJ, the ALJ did not make any findings as to whether Williams had openly and notoriously recognized plaintiff as his daughter. However, after remand by this Court, the ALJ who had originally heard and decided this case stated specifically that he found credible the testimony of several people who had either testified before him or had filed affidavits to the effect that Williams had publicly acknowledged plaintiff as his daughter.[12] Further, the ALJ, upon remand found less credible the statements made by certain persons who had indicated that they were unaware of any such acknowledgements by Williams. Thus, in sum, the ALJ found on remand that Williams had openly and notoriously acknowledged plaintiff as his daughter. Accordingly, under Maryland law, plaintiff is entitled to recover herein.[13] Therefore, an appropriate Order will be today filed by this Court reversing the Secretary's decision and requiring that the Secretary pay the appropriate amount of the benefits sought by plaintiff.

---

**12.** *See* the affidavit of the Honorable J. Robert Brown, Deputy Chief Administrative Law Judge, dated May 18, 1981. Judge Brown further found credible other circumstantial evidence which indicated that Williams had acknowledged plaintiff as his daughter.

**13.** The Secretary has not argued that the open and notorious acknowledgement must take place in Maryland. However, if the Secretary had so argued he could not have prevailed in that regard. *See* Comment g of the Restatement (Second) § 287, quoted *supra*. *See also In re Lund's Estate*, 26 Cal.2d 472, 159 P.2d

643, 647, 651 et seq. (1945); *Van Horn v. Van Horn*, 107 Iowa 247, 77 N.W. 846, 847–48 (1899); *Record v. Ellis*, 97 Kan. 754, 156 P. 712 (1916). *But cf. Eddie v. Eddie*, 8 N.D. 376, 79 N.W. 856 (1899).

Also, because this Court has decided to apply Maryland law rather than South Carolina law, it need not determine the application of *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), and its progeny, to South Carolina's differentiation between inheritance by an illegitimate child from a mother as opposed to such inheritance from a father.